TOMIO B. NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
JEFFREY A. TOPOR (SBN 195545)
Jeff.Topor@wbd-us.com
GENEVIEVE WALSER-JOLLY (SBN 262784)
Genevieve.Walser-Jolly@wbd-us.com
MICHELLE CATAPANG (SBN 308038)
Michelle.Catapang@wbd-us.com
KRISTINA HOVSEPYAN (SBN 340674)
Kristina.Hovsepyan@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

JONATHAN GABRIELLI and JAIME AYALA, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

vs.

UPBOUND GROUP, INC.; and RENT-A-CENTER, INC.,

Defendants.

CASE NO.: 4:25-cv-00631-HSG

**DEFENDANTS UPBOUND GROUP, INC. AND RENT-A-CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: Thursday, June 5, 2025
Time: 2:00 p.m.
Place: Courtroom 2, 4th Floor
Judge: Hon. Haywood S. Gilliam, Jr.

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, June 5, 2025, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 2, 4th Floor, of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Haywood S. Gilliam, Jr., Defendants Upbound Group, Inc. and Rent-A-Center, Inc. ("Defendants") will, and hereby do, move this Court for an order, pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure, dismissing the claims asserted by Plaintiffs Jonathan Gabrielli ("Gabrielli") and Jamie Ayala ("Ayala") (collectively, "Plaintiffs").

The motion is made on the grounds that (1) Plaintiffs lack Article III standing to assert their claims; (2) the Court lacks personal jurisdiction over Defendants; (3) Plaintiffs have failed to state a claim upon which relief can be granted; and (4) Plaintiffs have failed to join necessary parties.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support, the records on the file in this action, and all other evidence or argument the Court may permit at the hearing of this matter.

DATED March 20, 2025

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
JEFFREY A. TOPOR
GENEVIEVE WALSER-JOLLY
MICHELLE CATAPANG
KRISTINA HOVSEPYAN

By: /s/Jeffrey A. Topor
Attorneys for Defendants

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) .................................x

I. INTRODUCTION ..........................................................................................1

II. ALLEGATIONS OF THE COMPLAINT ...........................................................3

III. ARGUMENT ..............................................................................................6

A. Plaintiffs Lack Article III Standing to Assert Their Claims ................................6

B. The Court Lacks Personal Jurisdiction Over Defendants ....................................8

C. Each Claim Must Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted ..........................................................14

1. The Invasion of Privacy and Intrusion Upon Seclusion Claim Fails.........15

2. Plaintiffs Fail to State a Wiretapping Claim Under the Penal Code..........16

3. The "Pen Register" Claim Under Section 638.51 of the Penal Code Fails........................................................................................19

4. The Fraud Claims Fail to Satisfy Rule 9b's Heightened Pleading Standard ...................................................................................20

5. The Unjust Enrichment Claim Does Not Allege Actionable Wrongdoing Or Unjustly Earned Profits .................................................21

6. Plaintiffs' Trespass to Chattels Claim Fails Because Plaintiffs Do Not Allege Significant Interference with Their Devices ...........................22

7. The Complaint Must Be Dismissed Because Plaintiffs Have Failed to Join Necessary Parties ..........................................................23

IV. CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ....10

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. Feb. 29, 2024) ....22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....14

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ....10

*Briskin v. Shopify*,
87 F.4th 404 (9th Cir. 2023) ....13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....23

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....10

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ....17

*Byars v. Sterling Jewelers, Inc.*,
2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) ....8

*Calder v. Jones*,
465 U.S. 783 (1984) ....10, 11, 12

*Carroll v. J.M. Smucker Co.*,
2023 U.S. Dist. LEXIS 104522 (N.D. Cal. June 15, 2023) ....10, 11, 13

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....6

*Conohan v. Gen Digital Inc.*,
2025 U.S. Dist. LEXIS 29803 (C.D. Cal. Feb. 18, 2025) ....13

*Cooley v. First Data Merc. Servs., LLC*,
2020 U.S. Dist. LEXIS 265810 (N.D. Ga. Feb. 7, 2020) ........................................................25

*CP Nat'l Corp. v. Bonneville Power Admin.*,
928 F.2d 905 (9th Cir. 1991) ........................................................24, 25

*Daghaly v. Bloomingdales.com, LLC*,
2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024)........................................................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................9

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. Jul. 22, 2024) ........................................................21, 22

*Dole Foods Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ........................................................10

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........................................................21

*Gabrielli v. Insider, Inc.*,
2025 U.S. Dist. LEXIS 28788 (S.D.N.Y. Feb. 18, 2025)........................................................7

*Garcia v. Build.com, Inc.*,
2023 U.S. Dist. LEXIS 121085 (S.D. Cal. July 13, 2023) ........................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........................................................9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)........................................................18

*Gutierrez v. Converse Inc.*,
2024 U.S. Dist. LEXIS 124135 (C.D. Cal. July 12, 2024)........................................................17

*Heiting v. FKA Distrib. Co.*,
2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) ........................................................8

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp.3d 1163 (C.D. Cal. 2024) ........................................................14

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)........................................................12, 14

*Hughes v. Vivint, Inc.*,
2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024)........................................8

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................8, 15

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. Jul. 1, 2021)........................................21

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)........................................16, 22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................................16, 22

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018)........................................9

*In re Zoom Video Communs. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. Mar. 11, 2021)........................................20

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................18

*Ingrao v. Addshoppers, Inc.*,
2024 U.S. Dist. LEXIS 214748 (E.D. Pa. Nov. 25, 2024)........................................18

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)........................................10

*Laboratory Corp. of America Holdings v. Davis*,
2025 U.S. LEXIS 427 (S. Ct. Jan. 24, 2025)........................................6

*Lacano Inves., LLC v. Balash*,
765 F.3d 1068 (9th Cir. 2014)........................................14

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.*),
715 F.3d 716 (9th Cir. 2013)........................................9

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023)........................................11

*Lightoller v. JetBlue Airways Corp.*,
2023 U.S. Dist. LEXIS 102158 (S.D. Cal. Jun. 12, 2023)........................................6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)........................................16

*M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sept. 16, 2024) ....... 16

*Martin v. Outdoor Network LLC*, 2024 U.S. Dist. LEXIS 33892 (C.D. Cal. Jan. 31, 2024) ....... 10, 11, 13

*Martin v. Sephora USA, Inc .*, 2023 U.S. Dist. LEXIS 55930 (E.D. Cal. Mar. 30, 2023) ....... 17

*Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024) ....... 23, 24

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ....... 12, 13

*Medical Lab. Mgmt. Consultants v. American Broad. Cos., Inc.*, 306 F.3d 806 (9th Cir. 2002) ....... 15

*Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024) ....... 18

*Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. Jul. 17, 2023) ....... 6, 8

*Mirmalek v. Los Angeles Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ....... 19

*Moody v. C2 Educ. Sys.*, 2024 U.S. Dist. LEXIS 132614 (C.D. Cal. July 25, 2024) ....... 19

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030 (9th Cir. 1983) ....... 24

*Popa v. PSP Grp., LLC*, 2023 U.S. Dist. LEXIS 191053 (W.D. Wash. Oct. 24, 2023) ....... 7

*Posados v. Goodyear Tire & Rubber Co.*, 2024 U.S. Dist. LEXIS 228992 (S.D. Cal. Dec. 13, 2024) ....... 8

*Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025) ....... 8

*Saeedy v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 227915 (W.D. Wash. Dec. 21, 2023) ....... 7

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......................................................................................6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .....................................................................11, 13, 18

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .....................................................................................9, 10

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. Mar. 9, 2021) ..............................................................22

*Smith v. Facebook, Inc.*
262 F. Supp. 3d (N.D. Cal. 2017)...........................................................................11, 14

*Smith v. Yeti Coolers, LLC*,
2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 2024) ..................................................18

*Stark v. Stall*,
2019 U.S. Dist. LEXIS 132814 (S.D. Cal. Aug. 7, 2019)...............................................25

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .........................................................................................................6

*Valenzuela v. Kroger Co.*,
2024 U.S. Dist. LEXIS 56985 (C.D. Cal. Mar. 2024)......................................................18

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..................................................................................20, 21

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................................................................................................9, 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .........................................................................................................5

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012) ...........................................................................................11

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ..........................................................................................6

*Will Co. v. Lee*,
47 F.4th 917 (9th Cir. 2022).......................................................................................9, 12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .........................................................................................................9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ........ 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 18

*Zarif v. Hwareh.com, Inc.*,
2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 13, 2025) ........ 9, 10, 11, 13

**State Cases**

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 15

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 16

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ........ 23

*People v. Beeman*,
35 Cal. 3d 547 (1984) ........ 18

*Shulman v. Group W Prods., Inc.*,
18 Cal. 4th 200 (1998) ........ 15

*Tavernetti v. Superior Court of San Diego County*,
22 Cal. 3d 187 (1978) ........ 17

**Federal Statutes**

18 U.S.C. § 2510(8) ........ 18

**State Statutes**

Cal. Pen. Code § 631(a) ........ 16, 17, 18, 24
Cal. Pen. Code § 638.51 ........ 19

**Rules**

Fed. R. Civ. P. 9(b) ........ 20
Fed. R. Civ. P. 12 *et seq*. ........ 9, 14
Fed. R. Civ. P. 19 *et seq* ........ 23, 24

**Additional Resources**

*Judicial Council of California Civil Jury Instruction (CACI) No. 1800. Intrusion into Private Affairs* (2025 edition)....................15

**STATEMENT OF ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3))**

The motion raises the following issues to be decided:

A. Whether the Complaint should be dismissed because Plaintiffs lack Article III standing to assert their claims;

B. Whether the Complaint should be dismissed because the Court lacks personal jurisdiction over Defendants;

C. Whether the Complaint should be dismissed because Plaintiffs have failed to state a claim upon which relief can be granted; and,

D. Whether the Complaint should be dismissed because Plaintiffs have failed to join necessary parties.

## I. INTRODUCTION

Plaintiffs Jonathan Gabrielli and Jaime Ayala ("Gabrielli," "Ayala," or "Plaintiffs") are using this lawsuit to launch an ambitious attack against the alleged online tracking activity employed by well-known internet behemoths.[1] Plaintiffs' putative class action complaint demonizes the allegedly invasive data collection practices of Facebook, Google, TikTok, Microsoft, Adobe, and other third parties, who allegedly use tracking software installed on "millions" of websites across the internet to create detailed profiles about website users across their networks. Plaintiffs, however, have not sued these third parties.

Instead, they have sued Defendants Upbound Group, Inc. and Rent-A-Center, Inc. ("Defendants"), retailers who operate just a few of the "millions" of websites that allegedly use the third parties' software.[2] According to Plaintiffs, when visitors to Defendants' websites are presented with "a popup cookie consent banner" and they click to "decline" cookies, the cookies and other tracking technologies of the third parties are installed on their devices, allegedly allowing the non-parties to track the visitors' browsing activity.

Conspicuously absent from the Plaintiffs' 69-page, 200-plus paragraph Complaint, however, are allegations that Defendants, in fact, placed any specific cookie or tracking technology on either Plaintiff's device after they allegedly visited the Rent-A-Center website. Nor do Plaintiffs allege they looked at, or clicked on, anything while on the websites, or that Defendants captured any specific information (private or otherwise) during their site visits. Plaintiffs do not identify any specific information that was transmitted to, or received by, any of the ten third parties listed

---

[1] This is one of at least four virtually identical lawsuits filed by Gabrielli and his counsel in this court. *See Gabrielli v. Haleon US Inc.*, Case No. 4:25-cv-02555 (N.D. Cal.); *Shah v. Hilton Worldwide Holdings, Inc.*, Case No. 5:25-cv-01018 (N.D. Cal.); *Gabrielli v. Motorola Mobility, LLC*, Case No. 4:24-cv-9533 (N.D. Cal.). Gabrielli filed similar actions, represented by other counsel, in federal court in New York recently, one of which was dismissed last month for lack of Article III standing. *See Gabrielli v. Insider, Inc.*, Case No. 1:24-cv-01566 (S.D.N.Y.) (dismissed Feb. 18, 2025); *Gabrielli v. U.S. News & World Report, L.P.*, Case No. 1:24-cv-01685 (S.D.N.Y.).

[2] Defendants are one and the same: Rent-A-Center, Inc. changed its name to Upbound Group, Inc. on February 27, 2023. *See* https://investor.upbound.com/news-releases/news-release-details/rent-center-inc-now-upbound-group-inc-advancing-its-mission (last visited Mar. 19, 2025).

in their pleading. In other words, Plaintiffs have described how the third parties' tracking software allegedly can operate if it is loaded onto the browser of a site visitor. They have alleged nothing, however, about how the software *did* operate when Plaintiffs allegedly visited Defendants' websites. Because of this glaring and crucial omission, the entire Complaint fails.

First, Plaintiffs lack Article III standing. Plaintiffs describe how typical websites allegedly work in general, but their Complaint says nothing about any harm caused as a result of their alleged "Experiences" when they visited the Defendants' site. Plaintiffs could have alleged the specific dates they visited the site, but they don't. Plaintiffs could have alleged specific pages they visited on the site, or products they viewed or searched, or the items they put in a cart, but they don't. Plaintiffs could have alleged they entered identifying information about themselves while on the site – such as their names, addresses, dates of birth, email address, gender, Social Security Number, or payment card information – but they don't.

Most importantly, Plaintiffs could have alleged cookies were placed on their devices when they visited the site, but they don't. And they could have described the specific information about their browsing activity and private communications that was tracked, collected, and then transmitted to the third parties, but they don't. Given this, Plaintiffs have not alleged any facts which, if proven true, would establish they have suffered an injury in fact. There is no need for the Court to consider the merits of their claims. They fail for lack of Article III standing.

The Complaint should also be dismissed because the Court does not have personal jurisdiction over Defendants. Plaintiffs have not alleged facts sufficient to establish specific jurisdiction, *i.e.*, they do not allege Defendants committed an intentional act or expressly aimed their conduct at California. Plaintiffs do not allege there is anything improper about the use of cookies and tracking technology. Rather, Plaintiffs complain that the Defendants' "popup cookie consent banner" did not operate as designed – an unintentional occurrence at its core.

The Complaint must also be dismissed because Plaintiffs fail to state claims upon which relief can be granted. The common-law invasion of privacy and intrusion upon seclusion claims fail because, as noted, Plaintiffs do not sufficiently allege what information was intercepted, and therefore have not alleged an invasion or intrusion, let alone one that was highly offensive.

The wiretapping and pen register claims under the California Penal Code fail because Plaintiffs have not alleged that Defendants installed cookies on their devices or that anyone tracked and collected their protected browsing information or transmitted it to any third party.

The common-law fraud claim fails to satisfy Rule 9b's heightened pleading standard. Among other deficiencies, Plaintiffs do not allege Defendants knew that visitors' requests to decline cookies were not honored, or that Defendants intentionally designed the cookie banner to ignore such requests. Nor have they sufficiently alleged detrimental reliance or damages.

The unjust enrichment claim fails because no such independent cause of action exists. Even if it did, Plaintiffs have not alleged any facts showing Defendants profited from their data.

The trespass to chattels claim fails because Plaintiffs do not sufficiently allege any significant interference with their devices. They only claim the cookies affected the storage and disk space on their devices, as well as the devices' performance, which is not enough.

Lastly, dismissal is warranted because Plaintiffs fail to join as defendants the Third Parties – Facebook, TikTok, Google, Microsoft, Adobe, and others – who allegedly received their allegedly private and personal browsing data. Proceedings without the Third Parties will unquestionably impair their ability to protect their interests, because each of Plaintiffs' seven claims requires finding that the Third Parties violated California's Penal Code and committed tortious conduct. The Third Parties must be joined and given the opportunity to defend themselves.

For each of these reasons, Defendants respectfully request that this motion be granted.

## II. <u>ALLEGATIONS OF THE COMPLAINT</u>

Defendants are both alleged to be Delaware corporations with their principal place of business in Plano, Texas. Dkt. No. 1 ¶¶ 8-9. They are "best known for owning Rent-A-Center, which is one of the largest rent-to-own (RTO) retailers in the United States." *Id.* ¶ 28. Rent-A-Center allegedly "operates physical stores that provide consumers with an alternative method for acquiring furniture, electronics, appliances, and other household goods by allowing them to rent products with the option to purchase later." The Defendants also own "Acima Leasing, a technology company that focuses on providing flexible lease-to-own solutions for customers across a wide range of durable goods and retailers." *Id.* Plaintiffs do not allege they acquired any

goods or services from, or that they entered into any rent-to-own or lease-to-own agreement with, Defendants. Instead, their sole alleged interactions with Defendants were through visits to one of Defendants' websites.[3]

Defendants allegedly operate websites found at rentacenter.com, upbound.com, and acima.com (the "Websites"), which use a popup cookie consent banner that gives users "the option to control how they are they are tracked and how their personal data is used" by allowing them to "Decline" cookies. *Id.* ¶ 1. The Complaint depicts an "example screenshot," copied by an unknown person on an unknown date, allegedly "from the Rent-A-Center Website":




*Id.* ¶ 32; *see id.* ¶ 1.

According to the Complaint, although Defendants' Websites "offer consumers a choice to browse without being tracked, followed, and targeted by third-party data brokers and advertisers," these promises are "outright lies, designed to lull users into a false sense of security." *Id.* ¶ 2. Even after site visitors elect to "Decline" cookies, Plaintiffs say Defendants' Websites "enable several third parties," including Google LLC, Meta Platforms, Inc., (Facebook), ByteDance Ltd. (TikTok), Adobe Inc., Microsoft Corp., "and many more (the 'Third Parties') – to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications on the Websites." *Id.*[4] Plaintiffs describe these "browsing activities and private

---

[3] Defendants' customers enter into "rent to own" or "lease to own" agreements ("RTO Agreements") enabling them to access merchandise under a flexible rent to own transaction, with options to acquire ownership if desired by the customer or to terminate and return the product without further payment obligations. All RTO Agreements, since at least January 2021, have required individual arbitration. Similarly, everyone who applied for an RTO Agreement or signed up on Defendants' websites to receive marketing communications also agreed to individual arbitration. No putative class could ever be certified here because, among other reasons, individualized questions regarding who agreed to arbitrate would defeat predominance. In addition, if a class were certified, Defendants reserve their rights to move to compel absent class members to arbitrate their claims.

[4] The Complaint relies upon and incorporates by reference numerous publicly available sources that detail how each of the Third Parties allegedly utilize the data they receive. *See id.* ¶¶ 43-51

communications" in broad, sweeping terms. *See id.* ¶ 26.

According to Plaintiffs, even though they and many other site visitors expressly "Decline[d]" cookies, "Defendants nonetheless caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs' and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data." *Id.* ¶ 3. Those Third Parties are allegedly able to use data they receive "for their own purposes and financial gain." *Id*. ¶ 4.

The Complaint includes eight pages of alleged screenshots that purport to depict "the operations of the Third Party cookies on the Websites . . . observed using specialized tools that log incoming and outgoing Website network transmissions." *Id.* ¶ 37. The screenshots were taken when an unnamed person, on an unspecified date, using an unidentified computer at an unspecified location, allegedly visited the Rent-A-Center website and clicked "Decline" on the site's popup cookie banner. *Id.*

Plaintiffs claim that "Private Communications" – if they are "tracked and collected" by the Third Parties – have value. *Id*. ¶¶ 93-97. Plaintiffs do <u>not</u> allege, however, that Defendants placed any third-party cookie on <u>their</u> devices or that Defendants caused any data about <u>them</u>, including Private Communications, to be tracked, collected, or transmitted to any third party.

Plaintiffs assert seven causes of action against Defendants. *Id.* ¶¶ 124-203. They seek to represent a class comprised of "All persons who browsed any of the Websites in the State of California after clicking the 'Decline' link in the popup cookies consent banner within the four years preceding the filing of this Complaint (the 'Class Period')." *Id.* ¶ 116.[5]

---

(Facebook Cookies); ¶¶ 52-64 (Google Cookies); ¶¶ 65-75 (TikTok Cookies); ¶¶ 76-79 (Adobe Cookies); ¶¶ 80-83 (Microsoft Bing Cookies); ¶¶ 84-91 (Additional Third-Party Cookies).

[5] Defendants reserve their rights to challenge class certification, either by opposing a motion to certify by Plaintiffs, by moving to deny class certification, or otherwise. Plaintiffs cannot satisfy the commonality and predominance requirements of Rule 23, among other defects with any attempt to certify a class. For example, the two proposed common questions identified in the Complaint are materially identical to the ones rejected as inadequate under Rule 23(a)(2) in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Moreover, establishing standing for each of the seven causes of action would require common proof that personal and private browsing data of class members was, in fact, collected, transmitted to, and received by a third party. Yet, whether that data was "personal" or "private" is an inherently individualized inquiry. And any attempt by

## III. ARGUMENT

### A. Plaintiffs Lack Article III Standing to Assert Their Claims

Under Rule 12(b)(1), the Court may "dismiss claims for lack of subject matter jurisdiction." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 861 (S.D. Cal. Jul. 17, 2023). Article III standing is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1). *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenge asserts the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

To establish Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A harm is "concrete" only if the injury bears "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 417.[6] Plaintiffs have not alleged they suffered a concrete injury.

Each of Plaintiffs' claims require a finding that the Third Parties tracked and collected their Private Communications. *See* Dkt. No. 1 ¶¶ 2, 26, 129, 139, 157, 171, 179, 191, 200. Despite this requirement, Plaintiffs' Complaint only speculates about what <u>could</u> happen to a website visitor; it does not say what <u>did</u> happen to them during their alleged visits to the site. Even when assumed true, the allegations about "Plaintiffs' Experiences" on the Rent-A-Center website fail to

---

Plaintiffs to duck that inquiry by arguing that it is enough that they themselves have standing may be foreclosed by the Supreme Court's decision later this term in *Laboratory Corp. of America Holdings v. Davis,* which will decide whether a putative class that includes members without Article III standing can be certified. *See* Case No. 24-304, 2025 U.S. LEXIS 427, *1 (S. Ct. Jan. 24, 2025). Nor is that the only obstacle to class certification; among other things, whether any "personal or private" data was, in fact, collected and transmitted by a site visitor's browser and received by a Third Party will always be an individual question, determined at the browser level.

[6] "[B]are procedural violations, divorced from any concrete harm" do not suffice for Article III standing. *Id.* at 440; *see also, e.g., Lightoller v. JetBlue Airways Corp*., 2023 U.S. Dist. LEXIS 102158, at *7-8 (S.D. Cal. Jun. 12, 2023) ("[A] bare CIPA violation by itself is insufficient to demonstrate Article III injury in fact").

demonstrate that Plaintiffs have suffered "injury in fact" sufficient to confer Article III standing.[7]

Plaintiffs do not allege the specific dates they visited the website, or whether they were in California on those dates. *See* Dkt. No. 1 ¶¶ 98, 106. They do not allege which webpages they visited, what search terms (if any) they entered, what products (if any) they viewed, or whether they clicked on anything during their visits. *Id*. ¶¶ 98-105 (Gabrielli), ¶¶ 106-113 (Ayala). They do not allege that, while visiting the website, they entered (or that Defendants captured and caused to be transmitted to any Third Party) any personal information, such as their names, addresses, dates of birth, Social Security Numbers, gender, email addresses or payment card information. *Id*. They do not include screenshots depicting any browsing data that was allegedly captured or transmitted during their visits. And, significantly, Plaintiffs never allege any information (much less any "private" or "personal" information) about their visits was, in fact, transmitted to and received by Facebook, Google, TikTok, Microsoft, Adobe, or any third party.[8] *Compare id.* ¶ 26 (describing categories of "private" and "personal" information the Third Parties are allegedly able to collect) *with* ¶¶ 98-113 (failing to allege any such information about Plaintiffs was captured by, transmitted to, or received by any Third Party).

Because Plaintiffs do not allege they provided any "private" or "personal" information while visiting the Rent-A-Center website, or that Defendants (or any Third Party) obtained any information in which Plaintiffs have a "protectable privacy interest" during or as a result of any such visit, they lack Article III standing. *See, e.g.*, *Daghaly v. Bloomingdales.com, LLC*, 2024 U.S. App. LEXIS 31929, *2-3 (9th Cir. Dec. 17, 2024) (affirming dismissal of CIPA claim for lack of Article III standing; finding similar allegations insufficient to state an injury in fact); *Gabrielli v. Insider, Inc.*, 2025 U.S. Dist. LEXIS 28788, *11-14, 16-21 (S.D.N.Y. Feb. 18, 2025) (dismissing

---

[7] Plaintiffs do not allege they visited Defendants' other websites, upbound.com or acima.com (*see* Dkt. No. 1 at ¶ 1).

[8] Regardless, neither Plaintiffs nor the putative class have a "protectable privacy interest" in the data described in the Complaint. *See, e.g.*, *Saeedy v. Microsoft Corp*., 2023 U.S. Dist. LEXIS 227915, at *14 (W.D. Wash. Dec. 21, 2023) (no Article III standing based on allegations that defendant collected "internet browsing activities," including while in "private browsing mode"); *Popa v. PSP Grp., LLC*, 2023 U.S. Dist. LEXIS 191053 at *12 (W.D. Wash. Oct. 24, 2023) (collecting cases where courts dismissed similar claims due to lack of Article III standing).

"pen register," invasion of privacy, unjust enrichment claims for lack of Article III standing; collection of IP address not a concrete injury); *Heiting v. FKA Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, *7 (C.D. Cal. Feb. 3, 2025) (no standing for pen register claim where plaintiff failed to allege any facts from which Court could infer concrete injury, "like when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized"); *Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 7139, *5-6 (C.D. Cal. Jan. 8, 2025) (holding bare violation of CIPA insufficient to confer standing; dismissing due to plaintiff's failure to allege contents of information shared on website); *Hughes v. Vivint, Inc.*, 2024 U.S. Dist. LEXIS 232423, *10 (C.D. Cal. July 12, 2024) (tentative ruling dismissing "pen register" claim on Article III grounds where Plaintiff did "not allege any of the basic facts concerning her interaction with the Website, including when she visited and what occurred during her visit," and "does not sufficiently explain what information of Plaintiff's was captured, only what information could be captured"), adopted as final ruling 2024 U.S. Dist. LEXIS 232422 (C.D. Cal. Aug. 5, 2024); *Mikulsky*, 682 F. Supp. 3d at 864 (dismissing CIPA and invasion of privacy claims on Article III grounds; "[t]o survive a motion to dismiss, a plaintiff must identify 'specific personal information she disclosed that implicates a protectable privacy interest'"); *Byars v. Sterling Jewelers, Inc*., 2023 U.S. Dist. LEXIS 61276, *7-10 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim on Article III grounds; no private information disclosed and thus no harm to privacy); *Posados v. Goodyear Tire & Rubber Co.*, 2024 U.S. Dist. LEXIS 228992, *9 (S.D. Cal. Dec. 13, 2024) ("[G]eneralized and conclusory allegations that [the] technology is capable of capturing private data . . . are insufficient to assert Plaintiff suffered a concrete injury"); *cf. In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-601 (9th Cir. 2020) (standing to pursue trespass to chattels and fraud claims present where plaintiffs alleged "their browsing histories carry financial value" and that defendant "profited from this valuable data").

**B. The Court Lacks Personal Jurisdiction Over Defendants**

Under Rule 12(b)(2), a party may challenge whether the court has personal jurisdiction over it. *See* Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal

jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.*), 715 F.3d 716, 741 (9th Cir. 2013); *see Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004); *Zarif v. Hwareh.com, Inc.*, Case No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, (S.D. Cal. Feb. 13, 2025), citing *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022).[9]

In the context of "internet tracking" litigation, the test for assessing whether the Court can exercise personal jurisdiction over foreign entities, like Defendants, is the same as in most other cases and commences with the "long arm" statute in effect in the state where the court is located. *See Schwarzenegger*, 374 F.3d at 800-01. The exercise of personal jurisdiction is constrained by the Fourteenth Amendment's Due Process Clause. *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

There are two forms of personal jurisdiction: general and specific.[10] Plaintiffs have not alleged that general jurisdiction exists here, *see* Dkt. No. 1 at ¶¶ 17, 19, nor can they, given their allegations that Defendants are incorporated and have their principal places of business outside California, *see id.* at ¶¶ 8-9.

Absent general jurisdiction, Plaintiffs must make a prima facie showing that specific jurisdiction exists. Because the Due Process Clause restricts the government's "authority to bind a nonresident defendant to a judgment of its courts," *see Walden*, 571 U.S. at 283 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)), a plaintiff must establish that the defendant has sufficient "'minimum contacts with [the forum state] such that the maintenance of

---

[9] The court may decide Defendants' motion without an evidentiary hearing, but to survive the motion, Plaintiffs must make a prima facie showing of the jurisdictional facts. *Id.* "A plaintiff makes a prima facie showing by producing admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction." *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018) ("*In re Packaged Seafood*).

[10] General jurisdiction enables a plaintiff to force a non-resident defendant to defend itself in the forum state for acts it allegedly committed outside the state because the defendant otherwise has a continuous and systematic connection to the forum state, such that it is deemed "at home" there. *See generally Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A corporation is primarily "at home" where it is incorporated and where its principal place of business is located. *See In re Packaged Seafood*, 338 F. Supp. 3d at 1137, 1339 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

the suit does not offend 'traditional notions of fair play and substantial justice,'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Walden*, 571 U.S. at 283.

The specific jurisdiction inquiry thus examines "the relationship" between "the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (cleaned up). As pertinent here (in this case raising tort claims), the specific jurisdiction test boils down to whether (1) Defendants purposefully directed their conduct at the forum or its residents, (2) Plaintiffs' claims arise out of or relate to the Defendants' forum-related conduct, and (3) exercising jurisdiction over Defendants would be reasonable, in other words, would comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Plaintiffs must satisfy the first two prongs; if they do not, there is no personal jurisdiction; if they do, the burden shifts to the defendant to satisfy the third prong. *See Burger King Corp.*, 471 U.S. at 477; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Plaintiffs have not met their burden and thus the Court need not address the third prong.

The Court analyzes the first prong of the specific jurisdiction question – purposeful direction – under the Supreme Court's *Calder*[11] effects test, which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Foods Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). All three parts of the *Calder* test must be satisfied. *Id.* at 805.[12]

---

[11] *Calder v. Jones*, 465 U.S. 783 (1984).

[12] These concepts have been well explained in a number of recent cases, which establish the framework applicable here, such as *Zarif v. Hwareh.Com, Inc.*, Case No. 23-cv-0565-BAS-DEB, 2023 U.S. Dist. LEXIS 52900, *3-6 (S.D. Cal. Mar. 25, 2024); *Martin v. Outdoor Network LLC*, Case No. 2:23-cv-09807-AB-AJR, 2024 U.S. Dist. LEXIS 33892, *3-6 (C.D. Cal. Jan. 31, 2024); *Carroll v. J.M. Smucker Co.*, Case No. C 22-08952 WHA, 2023 U.S. Dist. LEXIS 104522, *3-6 (N.D. Cal. June 15, 2023); *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 961-62 (C.D. Cal. 2023); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 509-11 (C.D. Cal. 2021).

Plaintiffs' sole jurisdictional allegation is as follows: "The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products and services provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California." Dkt. No. 1 at ¶ 17. This generic and conclusory allegation is not sufficient.

Plaintiffs have not alleged that Defendants committed an intentional act sufficient to establish purposeful direction. Rather, the gravamen of Plaintiffs' complaint is that Defendants' "popup cookie consent banner" did not operate as intended – visitors to Defendants' websites who allegedly declined cookies nonetheless had "cookies and other similar tracking technologies" placed on their "browsers and devices and/or transmit[ted] cookies along with user data" to various third parties (who are not parties to this action). *See* Dkt. No. 1 at ¶¶ 1-2.

"A defendant acts intentionally when it acts with an 'intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Zarif*, 2024 U.S. Dist. LEXIS 52900 at * 6 (quoted citations omitted); *see Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) ("Accordingly, an intentional action is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results."). Although courts routinely conclude that operating a website "is an intentional act for the purposes of the *Calder* effects test," *id.*; *see, e.g., Martin*, 2024 U.S. Dist. LEXIS 33892 at *7; *Carroll*, 2023 U.S. Dist. LEXIS 104522 at *6; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d at 951 (N.D. Cal. 2017) ("Defendants acted intentionally when they embedded Facebook code on their websites."), that rule does not apply here.

Specifically, Plaintiffs do not allege facts showing that Defendants intentionally designed the cookie banner to malfunction, *i.e.*, to ignore visitors' efforts to decline the placement of cookies. Nor do Plaintiffs allege that the third parties' behavior, in and of itself, was unlawful, *i.e.*, they do not challenge as *per se* unlawful the use of cookies and tracking technologies, or the collecting, aggregating, and analyzing of site visitors' data. Rather, Plaintiffs have sued Defendants because

Defendants allegedly "falsely told" website visitors "that they respected their privacy and that they could avoid tracking and data sharing when they browsed the Websites. Despite receiving notice of consumers' express declination of consent, Defendants defied it and violated state statutes, [and] tort duties." *Id.* at ¶ 5. Because Plaintiffs do not allege that Defendants set out to operate a deceptive website, Plaintiffs have failed to satisfy the first prong of the *Calder* effects test.

Second, Plaintiffs have not alleged facts showing Defendants expressly aimed their activities at California, sufficient to establish purposeful direction under the *Calder* test. They claim they "visited the Rent-A-Center Website to browse information about Defendants' products." Dkt. No. 1 at ¶¶ 98, 106; *see id.* at ¶¶ 101, 103, 109, 111.[13] But they do not allege they were in California when this happened, nor do they describe their browsing activities whatsoever.

Operating a website will not suffice to establish express aiming, *see Martin*, 2024 U.S. Dist. LEXIS 33892 at *7 (citing *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022), and even operating an interactive website is not sufficient, in and of itself, *see id.* There must be "something more" than just operating a website to find a defendant has expressly aimed its activities at the forum. *Id.* at *7-8; *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (operating interactive website alone not enough to demonstrate express aiming; "Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale. That result would be too broad to comport with due process."). Whatever that "something more" might be,[14] other than alleging that Defendants own and operate

---

[13] Again, Plaintiffs do not allege they visited Defendants' other websites. *See* n.7. Indeed, although Plaintiffs describe the Rent-A-Center website in detail throughout their Complaint, they say next to nothing about the Upbound or Acima sites, beyond conclusory assertions that the sites all operate alike. *See id.* at ¶¶ 30-32, 37-38.

[14] "In determining whether a nonresident defendant has done 'something more,' the Ninth Circuit has considered several factors, including, among others not relevant here, the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Saleh*, 562 F. Supp. 3d at 513, quoting *Mavrix Photo, Inc.*, 647 F.3d at 1229.

the websites and generically describing Defendants' businesses, *see* Dkt. No. 1 ¶ 28, Plaintiffs do not allege anything that might qualify.[15]

Beyond "browsing," they do not allege that they interacted with the Rent-A-Center website. Thus, they do not allege that they entered data into forms, searched any terms, clicked on links, made selections, added any items to their shopping cart, or made any purchases or entered into any agreements. *See* Dkt. No. 1 at ¶¶ 98-100, 103, 106-108, 111 (describing "Plaintiffs' Experiences"). Even then, that would not suffice, especially in the absence of any other allegations suggesting Defendants expressly aimed their activities at California. *See Martin*, 2024 U.S. Dist. LEXIS 33892 at *8-12 (rejecting argument that ability of site users to "chat with the host" and "fact that website function as an online store" was sufficient to constitute express aiming where claims were "based solely on Plaintiff's use of the chat function"); *Carroll*, 2023 U.S. Dist. LEXIS 104522 at *9-12 (viewing product video combined with general description of website interactivity features not sufficient, where plaintiffs did not allege they interacted with features or consummated commercial transaction); *Zarif*, 2024 U.S. Dist. LEXIS 52900 at *10-11 ("selling and delivering physical products via a website" not enough to "establish personal jurisdiction for alleged privacy violations" where plaintiff did not allege she ordered anything from site and sole basis for complaint was "mere browsing and use of Defendant's website"); *Conohan v. Gen Digital Inc.*, 2025 U.S. Dist. LEXIS 29803, *6 (C.D. Cal. Feb. 18, 2025) (no express aiming; dismissing pen register claim where plaintiff did not allege "he availed himself of Defendants' services"). Plaintiffs do not allege Defendants specifically targeted them or the California market or sought to do business only with California residents. *See Herbal Brands, Inc.*, 72 F.4th at 1092 ("When the website itself is the only jurisdictional contact, our analysis turns on whether the site had a

---

[15] In *Briskin v. Shopify*, 87 F.4th 404 (9th Cir. 2023), a three-judge panel of the court held that a defendant that allegedly tracked consumers and extracted and retained their data was not subject to personal jurisdiction in California simply because the plaintiff made an online purchase while in California. "When a company operates a nationally available e-commerce payment platform and is indifferent to the location of end-users, the extraction and retention of consumer data, without more, does not subject the defendant to specific jurisdiction in the forum where the online purchase was made." *Id.* at 409. The panel's decision was vacated and the case was heard *en banc* last fall. *See* 101 F.4th 706 (9th Cir. 2024). It remains under submission. *See* Case No. 22-15815 (9th Cir. Sept. 26, 2024).

forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum."); *accord Heiting v. Marriott Int'l, Inc.*, 743 F. Supp.3d 1163, 1171 (C.D. Cal. 2024). Plaintiffs do not allege Defendants "attempted to appeal to and profit from California customers in particular." *Cf. Zarif*, 2025 U.S. Dist. LEXIS 26519 at *10. Nor do they allege that Defendants "expressly aimed [their] conduct at the forum by delivering physical products to thousands of California residents." *Cf. id.* (opining that *Herbal Brands, Inc.*, 72 F.4th 1085, 1092-93 (9th Cir. 2023) (sale of physical product via interactive website and delivery of product to forum state provides necessary minimum contacts to support personal jurisdiction over nonresident defendant when plaintiff asserts intentional tort related to the sale of the product) "controls" given that Ninth Circuit has vacated *Briskin*). It is not enough that Defendants allegedly "participate in sending Plaintiffs' data" to third parties that might be "headquartered in California." *See Smith*, 262 F. Supp. 3d at 950-52 ("embedding third-party code cannot confer personal jurisdiction over a website operator in the forum where the third party resides"). In sum, Plaintiffs have not alleged facts sufficient to demonstrate Defendants expressly aimed their conduct at California. Thus, they have not shown purposeful direction and the Court therefore lacks personal jurisdiction over Defendants.

### C. Each Claim Must Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted

Under Rule 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. Although courts must assume the truth of *factual* allegations on a motion to dismiss, courts "do not accept *legal conclusions* in the complaint as true, even if cast in the form of factual allegations." *Lacano Inves., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014).

#### 1. The Invasion of Privacy and Intrusion Upon Seclusion Claim Fails

Plaintiffs maintain Defendants invaded their privacy and intruded upon their seclusion when Defendants failed to honor their choice to decline cookies on the Websites. *See* Dkt. No. 1 ¶¶ 127, 129, 138-39. These claims fail for the same reason Plaintiffs lack standing: nowhere do they allege Defendants caused cookies to be placed on their devices or that any personal or private

information was actually tracked, collected, and transmitted to any Third Party.

The elements of a claim for invasion of privacy under the California Constitution are "(1) the [plaintiffs] possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious as to constitute an egregious breach of social norms' such that the breach is 'highly offensive.'" *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601, *citing Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). The elements of a common law claim for intrusion upon seclusion are similar: "a defendant 'intentionally intrude[s] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person." *Id.* Due to their similarity, courts consider such claims together, asking "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Id.*[16]

Although Plaintiffs offer a primer on how websites and cookies operate generally (*see* Dkt. No. 1 ¶¶ 3-4, 20-27, 40, 129, and 138), Plaintiffs wholly fail to allege that Defendants caused cookies to be placed on their devices (intentionally or otherwise, *see* p. 5, *supra*), or that, as a result of cookies being placed on their devices, their private or personal data was tracked, collected, and transmitted to any third party. In a nutshell, Plaintiff speak of what could happen to a site visitor, not what did happen to them. Their claims for invasion of privacy and intrusion upon seclusion fail.

Because Plaintiffs have not alleged that their data was tracked and collected, they also have necessarily failed to allege that any intrusion was "highly offensive," as they must. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020) (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012)); *see In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure to third parties of unique device identifier

[16] Additionally, the invasion or intrusion must be intentional. *See Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998); *Medical Lab. Mgmt. Consultants v. American Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002); *Judicial Council of California Civil Jury Instruction (CACI) No. 1800. Intrusion into Private Affairs* (2025 edition) ("[t]o establish that [defendant] violated [plaintiff's] right to privacy … [plaintiff must prove all of the following: … 2. That [defendant] intentionally intruded.)."

number, personal data, and geolocation information did not constitute egregious breach of privacy); *see also Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 35-37 (1994) ("actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."). "Even negligent conduct that leads to theft of highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiffs' right to privacy." *In re iPhone Application Litig.*, 844, F. Supp. 2d at 1063. Plaintiffs do not allege facts demonstrating any invasion or intrusion was highly offensive. Their claims must be dismissed.[17]

**2. Plaintiffs Fail to State a Wiretapping Claim Under the Penal Code**

Plaintiffs claim Defendants "wiretapped" them in violation of section 631(a) of the California Penal Code by "surreptitiously enabl[ing] several third parties . . . to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications." Dkt. No. 1 ¶¶ 2, 157-59. The claim fails because 1) Defendants cannot wiretap themselves; 2) There are no facts alleged that any Third Party violated section 631(a) and that Defendants aided or abetted such a violation; and 3) there are no allegations that any Third Party intercepted the "contents" of any communication between Plaintiffs and Defendants.

Wiretapping occurs when a person "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit[.]" Cal. Pen. Code § 631(a). Section 631(a) applies to three distinct and mutually independent patterns of conduct: (1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities. *See Tavernetti v. Superior Court of San Diego County*, 22 Cal.3d 187, 192 (1978). Defendants, however, cannot be liable for

---

[17] There is no private right of action under the California constitutional right for damages. *See M.G. v. Therapymatch, Inc.*, 2024 U.S. Dist. LEXIS 166534, at *20 (N.D. Cal. Sept. 16, 2024).

eavesdropping on their own communications under section 631(a). *See Garcia v. Build.com, Inc.*, Case No. 22-cv-01985, 2023 U.S. Dist. LEXIS 121085, at *11-15 (S.D. Cal. July 13, 2023) (dismissing CIPA claim).

Accordingly, Defendants may only be liable if Plaintiffs prove Defendants have "'aided, agreed with, employed, or conspired with any person or persons to unlawfully do, or permit, or cause to be done" one of the other three bases for liability. *Id.* (citing Cal. Pen. Code § 631(a)). Plaintiffs must first plead and then prove that a "third party is liable for recording the communications in violation of the first, second, or third clauses of § 631(a)." *Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355, 2023 U.S. Dist. LEXIS 55930, *30 (E.D. Cal. Mar. 30, 2023); *see also Gutierrez v. Converse Inc.*, No. CV 23-6547, 2024 U.S. Dist. LEXIS 124135, *22 (C.D. Cal. July 12, 2024) ("[A] defendant cannot be liable for aiding and abetting another party in violation of this clause absent a predicate violation of Section 631(a)'s first three clauses."); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066-67 (C.D. Cal. 2023) (same).

The *Martin* Court dismissed the plaintiff's CIPA claim because it failed to allege a third party had violated the first, second, or third clauses of Section 631(a), noting that it was "problematic" that "Plaintiff has neither named a third-party defendant in this action, nor has clearly identified who the alleged third party 'eavesdropper' is." *Martin*, 2023 U.S. Dist. LEXIS 55930, at *31. Because the *Martin* plaintiff's allegations pertained only to the defendant, not third-party eavesdroppers, the plaintiff failed to state a claim under CIPA. *Id.*

Here Plaintiffs have not alleged that Facebook, Google, TikTok, Microsoft, Adobe, or any third party "wiretapped" the contents of their "communications" with Defendants' websites. Thus, there can be no aiding and abetting liability under Section 631(a) and the claim fails.[18]

---

[18] Moreover, to prevail under the aiding and abetting theory, "the weight of authority and sound law require proof that an aider and abettor act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) (emphasis in original); *see also Valenzuela v. Kroger Co.*, 2024 U.S. Dist. LEXIS 56985, **9-13 (dismissing similar CIPA claims based on failure to sufficiently allege scienter element for aiding and abetting) (C.D.

Plaintiffs' wiretapping claim fails for an independent reason, namely, Plaintiffs have failed to allege the "contents" of their communications were intercepted. Courts distinguish "between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy)." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) ("*Zynga*"). As to electronic communications, like those alleged here, the federal Wiretap Act defines "contents" as "include[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Additionally, "contents" of an online communication "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Zynga,* 750 F.3d at 1106.[19] "[B]asic identification and address information" automatically transmitted by defendants to third-party websites [do] not constitute "contents" of a communication; rather they [are] the type of "record information" that Congress excluded from the definition of "contents." *Id.* at 1107.[20]

Plaintiffs allege the Third Parties could intercept various categories of "browsing activities and private communications with Defendants." Dkt. No. 1 ¶ 26. But, again, Plaintiffs do not say which categories, if any, of their "Private Communications" – their data – were in fact intercepted. Accordingly, Plaintiffs' wiretapping claim must be dismissed.

---

Cal. Mar. 2024); *Smith v. Yeti Coolers, LLC*, 2024 U.S. Dist. LEXIS 194481, **11-13 (N.D. Cal. Oct. 2024) (same). Plaintiffs do not allege Defendants acted with "knowledge" and "intent."

[19] The Wiretap Act is commonly applied in the CIPA context. *See Saleh*, 562 F. Supp. 3d at 517.

[20] *See also, e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed . . . . the date and time of the visit," and other similar data not "contents"; *Mikulsky v. Bloomingdale's LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (same); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (parties agreed that "IP addresses, locations, browser types, and operating systems" were not "contents" of communications); *Ingrao v. Addshoppers, Inc.*, 2024 U.S. Dist. LEXIS 214748, *45-46 (E.D. Pa. Nov. 25, 2024) (no "contents" of communications alleged because capturing plaintiff's visit to website "is not substantive information").

### 3. The "Pen Register" Claim Under Section 638.51 of the Penal Code Fails

According to Plaintiffs, the "Third Parties' cookies and the corresponding software code" installed by Defendants' websites should be treated as "pen registers" within the meaning of section 638.51 of the Penal Code because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs' and the Class's computers or devices." Dkt. No. 1 ¶ 170. Defendants deny this, but even accepting this proposition as true, the claim fails.

Section 638.51 prohibits "a person" from "install[ling] or us[ing] a pen register or trap and trace device without first obtaining a court order . . . ." Cal. Pen. Code § 638.51; *see Moody v. C2 Educ. Sys.*, 2024 U.S. Dist. LEXIS 132614, *3 (C.D. Cal. July 25, 2024) ("To state a claim under § 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order."). A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50.

Plaintiffs' "pen register" claim fails because Plaintiffs do not allege that during <u>their</u> visits to Defendants' websites, the Defendants (or any third party) actually installed the "Third Parties' cookies and the corresponding software code" – *i.e.,* an alleged pen register – on their devices. *See* Dkt. No. 1 ¶¶ 98-105; *cf. Mirmalek v. Los Angeles Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, *11 (N.D. Cal. Dec. 12, 2024) (pen register claim survived where plaintiff alleged "that '[w]hen Plaintiff visited the Website, the Website's code—as programmed by Defendant—caused the Trackers to be installed on Plaintiff's browser.'"). Nor do Plaintiffs allege that any cookies or software code actually collected or transmitted any of their "dialing, routing, addressing, or signaling information" regarding their visits to the Rent-A-Center website. *See id.* Nor do Plaintiffs identify any Third Party who received "IP address" information or "user agent" information relating to Plaintiffs' visits to the Rent-A-Center site. *See id.* Without these basic facts, Plaintiffs' pen register claim cannot proceed.

**4. The Fraud Claims Fail to Satisfy Rule 9b's Heightened Pleading Standard**

The claim for Common Law Fraud, Deceit, and/or Misrepresentation alleges that Defendants "fraudulently and deceptively informed Plaintiffs and Class members that they could 'Decline' cookies." Dkt. No. 1 ¶ 178. Plaintiffs, however, have not alleged the claim with the necessary "particularity" required by Rule 9(b). Fed. R. Civ. P. 9(b); *In re Zoom Video Communs. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. Mar. 11, 2021) ("[A]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"). "Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). In particular, Plaintiffs have not alleged, and cannot allege, that Defendants knew at the time of their alleged site visits the "decline" button on the cookie banner did not operate as intended or that Defendants did not intend to honor website visitors' requests to decline cookies.

First, Plaintiffs do not specify the date(s) they were exposed to Defendants' alleged misrepresentations. *See In re Zoom Video Communs. Priv. Litig.*, 525 F. Supp. 3d at 1046 (dismissing fraud-based claims; no allegation of a "date on which any Plaintiff would have seen Zoom's alleged misrepresentations about privacy"). They allegedly visited the Rent-A-Center Website on "one or more" (Gabrielli) or "multiple" (Ayala) occasions "during the last four years," but it is not clear when they viewed Defendants' cookie banner, or even when they allegedly clicked the "Decline" cookies link. Dkt. No. 1 ¶¶ 98-100, 106-108.

Plaintiffs also fail to allege Defendants <u>knew</u> the alleged representations were false and that Defendants <u>intended</u> to deceive Plaintiffs. *See Vess*, 317 F.3d at 1105; *see also* Doc. No. 1, ¶ 180 (only alleging that defendants "knew or should have known" how websites operated). They do not allege Defendants knew at the time of Plaintiffs' alleged site visits that clicking "Decline" on the cookie banner would not prevent third-party cookies from being loaded onto users' devices or that Defendants intentionally designed the websites to ignore visitors' election to decline cookies. *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. Jul. 1, 2021) (dismissing fraud-based claims; "[T]he 3AC is void of facts that so much as suggest that . . .

Google, *at the time of the alleged misrepresentations*, had the intent to mislead or omit material information . . .") (emphasis in original).

Plaintiffs also failed to sufficiently allege the elements of detrimental reliance and damages. *See Vess*, 317 F.3d at 1105. Although they claim they "provided more personal data than they would have otherwise," they do not say what that data was. *See* Dkt. No. 1 ¶ 185. They never specify what information about them was tracked, collected, transmitted, or received by Defendants or by any third party. Plaintiffs have failed to state a claim for fraud.

**5. The Unjust Enrichment Claim Does Not Allege Actionable Wrongdoing Or Unjustly Earned Profits**

Plaintiffs allege Defendants were "unjustly enriched . . . by permitting the Third Parties to . . . track and collect users' Private Communications even after Class members rejected such cookies." Dkt. No. 1 ¶ 191. It is unclear that an "unjust enrichment" claim actually exists under California law. "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *but see ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (observing that "[s]ome California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action," and allowing "the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.").

Regardless, Plaintiffs would need to plead and then prove "that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP*, 828 F.3d at 1038. Again, Plaintiffs wholly failed to allege Defendants or any third party "tracked" or "collected" their data, so the unjust enrichment claim fails. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. Jul. 22, 2024) (dismissing unjust enrichment claim; plaintiffs failed to state a claim against Google for any unlawful conduct).

The claim also fails because Plaintiffs have not alleged <u>any</u> facts demonstrating that Defendants profited from their data. They say only that Defendants "can use the data" for marketing and advertising purposes. Dkt. No. 1 ¶¶ 93-94. This is insufficient to show Defendants

in fact used Plaintiffs' data, let alone that they actually profited from doing so. *See e.g., In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 835 ("Plaintiffs have not pleaded any description of the 'personal information' that Defendants' allegedly used. Without such facts, Plaintiffs' assertion that Defendants garnered 'substantial profits' from the information is purely conclusory"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. Feb. 29, 2024) ("While Plaintiffs allege that 'a complete health care record sells for $250 on average,' the Complaint does not include facts specific to unjust enrichment of Defendant resulting from Plaintiffs' information").

The claim also fails because Plaintiffs do not allege specific facts showing they lack adequate remedies at law. *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891 (N.D. Cal. Mar. 9, 2021). Dismissal of the unjust enrichment claim is warranted.

**6. Plaintiffs' Trespass to Chattels Claim Fails Because Plaintiffs Do Not Allege Significant Interference with Their Devices**

Plaintiffs' final claim is for trespass to chattels, based on their allegations that "Defendants . . . caused cookies" and "third party software code to be stored" on their "browsers and devices." Dkt. No. 1 ¶¶ 200-02. Under California law, in the context of electronic communications, "[a]n action for trespass arises when the trespass actually did, or threatened to, interfere with the intended functioning of the system, as by *significantly reducing* its available memory and processing power." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (emphasis in original).

Plaintiffs allege that the placement of cookies on their devices caused a "reduction of storage, disk space, and performance" of their devices. Dkt. No. 1 ¶ 203. Even if they had alleged what cookies were actually placed on their devices – they do not – the Complaint does not sufficiently describe a "significant" interference with the intended functioning of their devices. *See, e.g.*, *Doe I*, 741 F. Supp. 3d at 846 (dismissing trespass to chattels claim based on similar allegations); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (allegations that Apple programs consumed devices' memory space and shortened their battery life were insufficient to state a trespass to chattels claim); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 124 (N.D. Cal. 2020) (allegation that Apple's two-factor authentication resulted in a 2-5 minute delay in the login

process was insufficient to state a trespass claim); *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003) (trespass to chattels tort "does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning"). The trespass to chattels claim fails.

**7. The Complaint Must Be Dismissed Because Plaintiffs Have Failed to Join Necessary Parties**

Dismissal is also warranted under Rule 12(b)(7) because Plaintiffs failed to join as defendants the "Third Parties" who allegedly received the "Private Communications" of Plaintiffs and putative class members. Any third parties who actually received personal or private information about Plaintiffs (none are identified by name) are required parties under Rule 19(a) of the Federal Rules of Civil Procedure.[21] Each claim in the Complaint alleges generally that the Third Parties acted unlawfully when they received and used private browsing information about Plaintiffs and putative class members. Proceeding without them will unquestionably impair their ability to protect their interests; namely, they could be found to have engaged in violations of California's Penal Code and other tortious conduct without having a chance to defend themselves. Accordingly, Plaintiffs' failure to join the Third Parties warrants dismissal.

"A party may move for dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(7) for 'failure to join a party under Rule 19.'" *Maverick Gaming LLC v. United States*, 123 F.4th 960, 971 (9th Cir. 2024). Rule 19 involves a three-step analysis. First, the court determines if "the absent party is 'required' under Rule 19(a)." *Id.* at 972. If so, the court then determines if it is feasible to join the absent party. *See id.* If joinder is not feasible, then the court "must . . . 'determine whether, in equity and good conscience, the action should proceed among the existing

---

[21] Rule 19(a) provides: "Persons Required to Be Joined if Feasible. (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

parties or should be dismissed.'" *Id.* (quoted citations omitted). "Rule 19 is designed to protect the interests of absent parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial determinations or the impairment of interests or rights." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991).

"An entity's status as a 'necessary' party is not judged by any prescribed formula, but instead 'can only be determined in the context of particular litigation.'" *Id.* at 912 (citation omitted). Necessary parties are entities that have an interest in the action and disposing of the action in their absence may impair their ability to protect their interest. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). The Ninth Circuit has held "there is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)" and the Court has "emphasized the practical and fact-specific nature of the inquiry." *Maverick Gaming LLC*, 123 F.4th at 972 (cleaned up). The rule is designed to prevent "unnecessary and repetitive litigation." *CP Nat'l Corp*, 928 F.2d at 912; *see also Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (one goal of Rule 19: "precluding multiple lawsuits on the same cause of action").

Plaintiffs cannot prevail here without proving that the Third Parties violated the California Penal Code and common law. The Third Parties allegedly used their "programming scripts" and cookies to "surreptitiously track in real time and collect" the Plaintiffs' allegedly "Private Communications." Dkt. No. 1 at ¶¶ 25-27, 40-42, 43-92. The Third Cause of Action for "wiretapping" requires proof that the Third Parties' cookies and software code are a "machine, instrument or contrivance" within the meaning of section 631(a) of the California Penal Code, and proof that the Third Parties (not the Defendants) "wiretapped" the Plaintiffs. *Id.* at ¶¶ 154-165. Similarly, the Fourth Cause of Action requires proof that the Third Parties' cookies and software code are "pen registers," which acted as "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information" from Plaintiffs' and class members devices within the meaning of section 638.50(b) of the Penal Code. *Id.* at ¶¶ 169-176. Likewise, each of the common law claims (the First, Second, and Fourth through Seventh Causes of Action) require proof that the Third Parties used their software code and cookies to unlawfully track, collect, compile, and

monetize the allegedly Private Communications of Plaintiffs and putative class members. *Id.* at ¶¶ 124-145, 177-203.

In short, Plaintiffs cannot prevail on any of their claims against Defendants without first identifying which of the Third Parties actually received private data about them, and then establishing those Third Parties violated California law. A ruling in favor of Plaintiffs here will substantially impair the ability of the Third Parties to protect their interests. *See Stark v. Stall*, 2019 U.S. Dist. LEXIS 132814, *11-12 (S.D. Cal. Aug. 7, 2019) (court could not accord complete relief in absence of third party that allegedly committed challenged conduct on behalf of defendant); *Cooley v. First Data Merc. Servs., LLC*, 2020 U.S. Dist. LEXIS 265810, *4-10 (N.D. Ga. Feb. 7, 2020) (same). If they are not joined, Plaintiffs could conceivably sue each Third Party in a separate similar action. *See CP Nat'l Corp*, 928 F.2d at 912 (party was necessary because plaintiff "could conceivably sue [the party] in a separate action" and "[t]hat action would be merely a clone of this proceeding, with one crucial distinction – the court hearing that action would have the power to proceed to judgment as to [the party]."). This is exactly the kind of "wasteful litigation" that Rule 19 is designed to prevent. *Id.* Dismissal under Rule 12(b)(7) is warranted.

## IV. CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court issue an order dismissing Plaintiffs' Complaint.

DATED March 20, 2025

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
JEFFREY A. TOPOR
GENEVIEVE WALSER-JOLLY
MICHELLE CATAPANG
KRISTINA HOVSEPYAN

By: /s/Jeffrey A. Topor
Attorneys for Defendants