**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 639-9090
Facsimile:  (415) 449-6469

Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN GABRIELLI and JAIME AYALA, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UPBOUND GROUP, INC.; and RENT-A-CENTER, INC.<br><br>Defendants. | Case No. 4:25-cv-00631-HSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>Hearing Date: June 5, 2025<br>Hearing Time: 2:00 PM<br>Courtroom: Courtroom 2, 4th Floor |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 3

    A.     RAC Falsey Told Plaintiffs and Other Users That They Could "Decline" Cookies on the Websites. .......................................................................... 3

    B.     RAC Intentionally Designed the Websites and the Websites' Cookie Banners. ........ 5

    C.     RAC Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both RAC and the Third Parties Profited. ...... 6

III.    ARGUMENT ....................................................................................................... 7

    A.     Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing. ......... 7

    B.     This Court has Specific Personal Jurisdiction over RAC. .......................... 11

    C.     RAC's 12(b)(6) Arguments Fail. .............................................................. 16

        1.     Plaintiffs have adequately pled privacy and intrusion upon seclusion claims. ........................................................................................ 16

        2.     Plaintiffs state a wiretapping claim under the penal code. ............. 18

        3.     Plaintiffs properly plead a "pen register" claim under section 638.51. .......... 20

    D.     Plaintiffs' Fraud and Misrepresentation Claims Satisfy Rule 9(b). .......................... 20

    E.     Plaintiffs' Unjust Enrichment Claim Properly Pled ............................................ 21

    F.     Plaintiffs Sufficiently Plead Trespass to Chattels. ............................................ 22

    G.     Dismissal on the Basis of Required Joinder is Improper. ................................... 23

    H.     Plaintiffs Request Leave to Amend If Necessary. .............................................. 25

IV.     CONCLUSION ................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.J. v. LMND Med. Grp.*,
  No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)......................1

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) .......................................................................................................1

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) .......................................................................................................1

*Briskin v. Shopify, Inc.*,
  No. 22-15815, 2025 U.S. App. LEXIS 9410 (9th Cir. Apr. 21, 2025)...........................................1

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ..........................................................................................1

*Brown v. Natures Path Foods, Inc.*,
  No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .....................1

*Bruton v. Gerber Prod. Co.*,
  703 F. App'x 468 (9th Cir. 2017) ..................................................................................................1

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)......................................................................................................................1

*Byars v. Sterling Jewelers, Inc.*,
  No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) .................1

*Byars v. Tire*,
  654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ............................................................................1

*Calder v. Jones*,
  465 U.S. 783 (1984)......................................................................................................................1

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) .......................................................................................................1

*Daghaly v. Bloomingdales.com, LLC*,
  No. 23-4122, 2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024)..........................................1

*DaVinci Aircraft, Inc. v. United States*,
  926 F.3d 1117 (9th Cir. 2019) .....................................................................................................1

*DeSoto v. Yellow Freight Sys.*,
  957 F.2d 655 (9th Cir. 1992) .......................................................................................................1

*Doe v. Amgen, Inc.*,
  No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024)...............1

*Doe v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ..........................................................................................1

*eBay, Inc. v. Bidder's Edge, Inc.*,
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ........................................................................................1

*EEOC v. Peabody W. Coal Co.*,
  400 F.3d 774 (9th Cir. 2005) .......................................................................................................1

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .......................................................................................................1

*Fields v. Wise Media, LLC*,
  No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914,
  2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ................................................................. 1

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
  592 U.S. 351, 141 S. Ct. 1017 (2021) ............................................................................. 1

*Gabrielli v. Insider, Inc.*,
  No. 24-cv-01566 (ER), 2025 U.S. Dist. LEXIS 28788 (S.D.N.Y. Feb. 18, 2025) ........................... 1

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*,
  750 F.3d 1098 (9th Cir. 2014) ........................................................................................ 1

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................. 1

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................................... 1

*Heiting v. FKA Distrib. Co.*,
  No. 2:24-cv-07314-HDV-AGR, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) ............... 1

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
  72 F.4th 1085 (9th Cir. 2023) ........................................................................................ 1

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) .................................................................................................. 1

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  865 P.2d 633 (Cal. 1994) .............................................................................................. 1

*Hughes v. Vivint, Inc.*,
  No. CV 24-3081-GW-KSx, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024) ................. 1

*In re Facebook Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................................ 1

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................. 1

*In re GlenFed, Inc. Secs. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ........................................................................................ 1

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  934 F.3d 316 (3rd Cir. 2019) ........................................................................................ 1

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................... 1

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310, 66 S. Ct. 154 (1945) ............................................................................... 1

*Intel Corp. v. Hamidi*,
  30 Cal.4th 1342 (2003) ................................................................................................ 1

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................................. 1

*Jones v. Ford Motor Co.*,
  85 F.4th 570 (9th Cir. 2023) ........................................................................................ 1

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................................. 1

*Keeton v. Hustler Mag., Inc.*,
  465 U.S. 770 (1984) ..................................................................................................... 1

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
   No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) .............. 1

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) .................................................................................................... 1

*Mikulsky v. Noom, Inc.*,
   682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................................................................................ 1

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ......................................................................................................... 1

*Northrop Corp. v. McDonnell Douglas Corp.*,
   705 F.2d 1030 (9th Cir. 1983) .................................................................................................... 1

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..................................................................................... 1

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) .................................................................................................... 1

*Posados v. Goodyear Tire & Rubber Co.*,
   No. 23-cv-0402-L-DDL, 2024 U.S. Dist. LEXIS 228992 (S.D. Cal. Dec. 13, 2024) ..................... 1

*Revitch v. New Moosejaw*, LLC,
   No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ......................... 1

*Rodriguez v. Autotrader.com, Inc.*,
   No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025)..................... 1

*Rodriguez v. Ford Motor Co.*,
   No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ............................... 1

*Rodriguez v. Google LLC*,
   No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021).......................... 1

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ..................................................................................................... 1

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................................................................................... 1

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .................................................................................................... 1

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..................................................................................................... 1

*Shah v. Capital One Fin. Corp.*,
   No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......................... 1

*Six v. IQ Data Int'l, Inc.*,
   129 F.4th 630 (9th Cir. 2025) .................................................................................................... 1

*Smith v. Yeti Coolers, LLC*,
   No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024)....................... 1

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)................................................................................................................... 1

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. 2015) .................................................................................................... 1

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..................................................................................... 1

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) ........................................................................................... 1

*Zeff v. Greystar Real Estate Partners, LLC,*
    No. 20-cv-07122-EMC, 2021 U.S. Dist. LEXIS 30615 (N.D. Cal. Feb. 18, 2021) ........................ 1

**Statutes**

Cal. Penal Code § 631(a) ...................................................................................................... 17

Cal. Penal Code § 638.50(b) ................................................................................................ 19

Cal. Penal Code § 638.51 ..................................................................................................... 19

Cal. Penal Code § 638.51(a) ................................................................................................ 19

**Other Authorities**

Moore's Fed. Prac. — Civ. § 19.03[2][b][ii] ..................................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2

Fed. R. Civ. P. 12(b)(7) ........................................................................................................ 22

Fed. R. Civ. P. 19 ............................................................................................................ 22, 23

Fed. R. Civ. P. 19(a)(1) ........................................................................................................ 23

Fed. R. Civ. P. 19(a)(1)(B) ............................................................................................. 23, 24

Fed. R. Civ. P. 19(a)(1)(B)(i) .............................................................................................. 24

Fed. R. Civ. P. 9(b) .............................................................................................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.    **INTRODUCTION**

In the age of the internet, data is the new oil. As companies develop increasingly invasive and integrated means of extracting and aggregating consumer data, consumers often rely on website's representations that they may browse free from the watchful eyes of third parties. In this case, the privacy that Defendants Upbound Group, Inc. and Rent-A-Center, Inc. (collectively, "RAC") promised to visitors of their websites was an outright lie. When Plaintiffs accessed RAC's Rent-A-Center Website, they were presented with a cookie consent banner that promised users the opportunity to "Decline" cookies—small text files that, when attached to a users' browser or device, enable third parties to track users and collect their personal data and private communications.



Little did Plaintiffs know, however, that clicking "Decline" meant nothing. In truth, RAC's Websites unlawfully and intentionally allowed third parties to place non-essential tracking cookies on the devices of Plaintiffs and every other visitor to its websites, before, and ***even after*** Plaintiffs and many users explicitly declined third-party tracking cookies. As a result, RAC enabled third parties to track and record Plaintiffs' and other visitors' "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" against their consent. Class Action Complaint, ECF 1 ("CAC") ¶ 3.

Plaintiffs brought the instant action seeking to hold RAC accountable for this outrageous invasion of their privacy and to stop RAC from engaging in this unlawful conduct. RAC now moves to dismiss, claiming that Plaintiffs lack standing, have not joined necessary parties, have not adequately alleged their claims, and that this Court lacks jurisdiction. *See, generally* Motion to Dismiss, ECF 14 ("Motion"). The gravamen of RAC's arguments is that Plaintiffs merely allege how RAC's websites work generally but have not alleged that cookies were placed on their devices or that their data and communications were transferred to third parties. Mot. at 1–2. Like the conduct that spurred this suit, however, RAC's argument relies on illusion. The Complaint, of course, alleges that RAC wrongfully permitted third parties to place cookies on Plaintiffs' devices and browsers and that,

as a result, Plaintiffs' private information was transmitted to third parties. Plaintiffs support their allegations with a fulsome description of how RAC's websites operated to dupe consumers into a false sense of security and then proceeded to allow third parties to attach cookies to Plaintiffs' and Class members' devices and browsers and transmit their private communications to those third parties without Plaintiffs' and Class members' consent. Turning logic on its head, RAC argues that a description of how the websites functioned for all users somehow cuts *against* Plaintiffs' allegations regarding their personal experiences. RAC may believe that this line of attack is its best hope of avoiding liability, but it is simply wrong.

First, Plaintiffs have Article III standing because they plead a concrete injury—an invasion of privacy. Common law has long recognized invasions of privacy as cognizable injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, the tracking cookies, which allowed third parties to discern copious personal information from Plaintiffs, (CAC ¶ 129), establish a concrete injury sufficient to show Plaintiffs' Article III standing.

Second, Plaintiffs have established that this Court has specific personal jurisdiction over RAC. They have shown that (1) RAC purposefully directed its conduct at this forum and its residents, (2) that Plaintiffs' claims arise out of or relate to the RAC's forum-related conduct, and (3) exercising jurisdiction over RAC would be reasonable. Under the Ninth Circuit's recent decision *Briskin v. Shopify, Inc.*, "jurisdiction is proper because [RAC's] allegedly tortious actions deliberately targeted [Plaintiffs'] in California. No. 22-15815, 2025 U.S. App. LEXIS 9410, at *14 (9th Cir. Apr. 21, 2025) (en banc); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1088 (9th Cir. 2023) ("if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant has purposefully directed its conduct at the forum such that the exercise of personal jurisdiction may be appropriate."). Plaintiffs allege that RAC tortiously invaded their privacy, and the privacy of other Californian's, through RAC's operation of the websites. This is sufficient.

Third, RAC's scattershot 12(b)(6) arguments mostly rely again on its misguided reasoning that Plaintiffs' allegations regarding how the websites functioned for all users somehow undermines Plaintiffs' allegations regarding their own experiences. But RAC cannot ignore the well pleaded

facts—that RAC told Plaintiffs they could "Decline" cookies, that RAC lied and permitted those cookies anyway, and that, as a result, Plaintiffs' private communications were transmitted to third parties. These central facts describe a pervasive, offensive invasion of all users' privacy implemented using misrepresentations that meant to lull users into a false sense of privacy.

Finally, in a last-ditch effort, RAC claims that because the third parties to whom Plaintiffs' private information was transmitted have not been joined as parties to this action, dismissal is required. To be clear, these third parties are not "required parties" under the Federal Rules. But even if they were, dismissal is not the result. Indeed, RAC has failed to establish the conditions necessary for this Court to even consider dismissal based on the absence of the third parties.

In sum, RAC's arguments are based not on the facts alleged in the Complaint nor the law applicable to this case—but on RAC's selective reading of both. The Court should deny RAC's motion in its entirety.

## II.    FACTUAL BACKGROUND

### A.    RAC Falsey Told Plaintiffs and Other Users That They Could "Decline" Cookies on the Websites.

Like many companies, RAC designed its websites (rentacenter.com, upbound.com, and acima.com, each a "Website" and collectively, the "Websites") to include resources and programming scripts from third parties that enable those parties to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on visitors' browsers and devices to transmit cookies along with user data. CAC ¶ 2. RAC, however, offers consumers a choice to browse *without* having such cookies and other tracking technologies placed on their browsers, allowing consumers to use the Websites without being tracked, followed, and targeted by third party data brokers or advertisers. *Id*.

When consumers visit the Websites, RAC displays to them a popup cookie consent banner. *Id*. ¶ 1. RAC's cookie banners state that the Websites use cookies but expressly give users the option to control how they are tracked and how their personal data is used. *Id*. RAC assures visitors that they may choose to "Decline" cookies as shown below.



- 3 -

The cookie consent banner states "We use cookies to give you the best experience! We use cookies on our website. By clicking "Accept", you consent to the use of all the cookies according to our Cookie Policy." *Id.* The "Cookie Policy" disclosed the types of cookies used by the Websites, as well as a description of the types of data collected using those cookies. *Id.* ¶ 30. The banner then purported to provide users the opportunity to "Decline" cookies. *Id.* ¶ 32.

The representation that users could "Decline" cookies was false. Instead, even when users clicked "Decline" cookies, RAC nevertheless permitted third parties to place on Plaintiffs' and Class members' devices and browsers the very cookies they had declined. *Id.* ¶ 35. Once placed, these cookies allowed Plaintiffs' and Class members' data to be transmitted to third parties in the manner and for purposes alleged in the Complaint and as described below—including for purposes RAC itself described in its Cookie Policy and Privacy Policy. *Id.* ¶ 35.

Even after users elect to "Decline" cookies, RAC surreptitiously enabled an enormous number of third parties—including Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (Facebook), ByteDance Ltd. (TikTok), Adobe Inc. (dpm.demdex.net), Microsoft Corp. (Microsoft Bing and AppNexus), PubMatic, Inc., The Trade Desk, Inc. (adsrvr.org), Dun & Bradstreet Holdings, Inc. (Eyeota), Comscore, Inc. (Scorecard Research), Everest Technologies, Inc., and many more (the "Third Parties")—to place and/or transmit tracking cookies on the Websites. *Id.* ¶ 2.

The cookies RAC wrongfully permitted the Third Parties to place on Plaintiffs' devices and browsers—despite Plaintiffs' express rejection and despite RAC's express representation to the contrary—permitted the Third Parties to track and collect data in real time regarding Plaintiffs' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (the "Private Communications"). *Id.* ¶¶ 3, 26, 36.

In particular, both Plaintiffs Gabrielli and Ayala accessed and browsed the Rent-A-Center Website on one or more occasions. *Id.* ¶¶ 98, 106. Even before the popup cookie banner appeared on their screens, RAC programmed the Website to enable the Third Parties to place cookies and tracking technologies on their device and transmit their data to Third Parties without Plaintiffs' knowledge. *Id.*

¶¶ 102, 110. Then, after Plaintiffs clicked "Decline" cookies, they browsed the Rent-A-Center Website in reliance on the promises and representations RAC made in the cookie consent banner. *Id.* ¶¶ 103, 111. Despite Plaintiffs' clear declination of cookies, RAC continued to permit the placement of cookies and the transmission of his data to the Third Parties. *Id.* This allowed the Third Parties to track and collect Plaintiffs' Private Communications and data as they browsed the Rent-A-Center Website. *Id.*; *see also* CAC ¶¶ 43–92 (describing user data and communications transmitted by the third party cookies RAC permitted to be placed when users browsed the Rent-A-Center Website).

### B.    RAC Intentionally Designed the Websites and the Websites' Cookie Banners.

RAC voluntarily—i.e. intentionally—integrated "third-party resources" from the Third Parties into the Website's programming. *Id.* ¶ 22. RAC chose to install or integrate the Websites with resources from the Third Parties that, among other things, use cookies. *Id.* ¶ 29. Thus, when Plaintiffs and other Class members visited the Websites, both first-party cookies and third-party cookies were placed on their devices and/or transmitted to RAC and the Third Parties. *Id.* RAC intentionally incorporated into the Websites the software code that caused placement of the cookies. *Id.* RAC controls the software code of the Websites—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to third parties. *Id.* During the time period in which Plaintiffs accessed the Rent-A-Center Website, the Websites—which, again, RAC developed, maintains, and controls—permitted the Third Parties to place, store, and/or transmit third-party tracking cookies on Plaintiffs' devices and browsers. *Id.* ¶ 23.

The Websites allow visitors to browse and purchase Defendants' products and services. As they interact with the Websites (e.g., by entering data into forms, clicking on links, and making selections), Website users communicate Private Communications to RAC. *Id.* ¶ 28. The third-party cookies stored on and/or loaded from users' devices when they interact with the Websites are transmitted to the Third Parties, enabling them to, in real time, surreptitiously track and collect a Website users' Private Communications. *Id.* ¶ 26. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id.* ¶ 25.

### C.    RAC Intentionally Aided the Third Parties' Wrongful Collection of Plaintiffs' and Class Members' Data, By Which Both RAC and the Third Parties Profited.

RAC's use of the third-party resources on the Websites is done pursuant to agreements between RAC and the Third Parties. *Id.* ¶ 22. RAC intentionally designed the Websites with code that allows Third Parties to place cookies and send data directly to themselves—allowing the Third Parties to, simultaneous with Plaintiffs' activity on the Websites, analyze and aggregate the wrongfully collected data for their own purposes and financial gain. *Id.* ¶ 4.

Third-party cookies are used for a variety of purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and effectiveness of marketing campaigns); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (i.e. sharing users' activities with social media platforms). *Id.* ¶ 27. Ultimately, third-party cookies are utilized to boost website performance and revenue through the collection, utilization, and dissemination of user data. *Id.*

RAC's Cookie Policy states that it uses cookies to enhance its sales and marketing: "Marketing Cookies: These cookies are used to show advertising that is likely to be of interest to you based on your browsing habits. These cookies, as served by our content and/or advertising providers, may combine information they collected from our website with other information they have independently collected relating to your web browser's activities across their network of websites. In some cases, we can associate cookie information with an identiable [sic] individual." *Id.* ¶ 30.

RAC's Privacy Policy further describes how RAC uses cookies for its benefit: "We may collect certain analytics information automatically as you navigate our Services. This may include cookies, tracking pixels, tags or similar tools, such as session replay technologies that may log how you interact with our Services . . . . We collect this information for the purposes of analytics and research, customer service, marketing and advertising, newsletters and related communications, and website security and maintenance . . . . 3. How Do We Use 'Cookies' and Other Tracking Technologies? We may send one or more cookies to your computer or other device. We may also use other similar technologies such as tracking pixels, tags, or similar tools when you visit our Services. These technologies can collect

data regarding your operating system, browser type, device type, screen resolution, IP address, and other technical information, as well as navigation events and session information as you interact with our Services. This information allows us to understand how you use the Services." *Id*. ¶ 31.

RAC's Privacy Policy also reveals that RAC uses cookies to "Estimate our audience size and usage patterns; store information about your preferences, allowing us to customize our Services according to your individual needs; contact you to provide you with information or services that you request from us; advertise new content, events, and services that relate to your interest, provide you with more personalized content that is most relevant to your interest areas; and recognize you when you return to our services." *Id.*

Further, RAC's Privacy Policy lists categories of cookies and their purposes. *Id*. The purposes of the Third Party cookies wrongfully placed on Plaintiffs' and Class members' browsers and devices fall into categories such as "Analytics, Performance, and Research" ("These cookies, beacons, and pixels allow us to analyze activities on the Services. They can be used to improve the functioning of the Services. For example, these cookies recognize and count the number of visitors and see how they move around the Services. Analytics cookies also help us measure the performance of our advertising campaigns to help us improve them and to optimize the content on the Services for those who engage with our advertising."); "Social Networking" ("These cookies are used to enable you to share pages and content that you find interesting on our Services through third party social networking and other websites. These cookies may also be used for advertising purposes"); and "Advertising" ("These cookies and pixels are used to deliver relevant ads, track ad campaign performance, or track email marketing"). *Id*. ¶ 31.

## III.    ARGUMENT

### A.    Plaintiffs Plead a Concrete Injury-in-fact, Demonstrating Article III Standing.

Invasions of privacy have long been recognized at common-law as concrete injuries. *TransUnion*, 594 U.S. at 425; *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has held specifically that violations of CIPA suffice to confer Article III

standing. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

Plaintiffs allege that RAC invaded their privacy—causing them a concrete injury—when RAC intentionally permitted the Third Parties to place cookies on Plaintiffs' browsers and devices in order to "collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more. CAC ¶ 129; *see also id.* ¶¶ 3, 34–36, 129, 138, 157, 171, 182. This is a concrete injury sufficient to show Plaintiffs' Article III standing. *See In re Facebook Tracking*, 956 F.3d at 599 (holding that Facebook's tracking and collection of personal information on an individual's likes, dislikes, interests, and habits, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives, conferred standing). Indeed, the Third Circuit has noted, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) (cited favorably by the Ninth Circuit in *In re Facebook Tracking*). Here, where RAC presented Plaintiffs with a mere illusion of control over their information and then allowed the Third Parties to collect that information anyway, standing is manifest. RAC's argument to the contrary ignores the well-pleaded allegations in the Complaint and demands specificity beyond what is necessary at the pleading stage.

Indeed, RAC's own Cookie Policy and Privacy Policy outline the data captured and transmitted by the cookies RAC permitted the Third Parties to place on Plaintiffs' and Class members' browsers and devices. *See, e.g., id.* ¶ 30 ("we may collect information on content you have viewed to understand what interests you," "These cookies, as served by your content and/or advertising providers, may combine information they collected from our website with other information they have independently collected relating to your web browser's activities across their network of websites. In some cases, we

can associate cookie information with an identiable [sic] individual"); ¶ 31 ("These technologies can collect data regarding your operating system, browser type, device type, screen resolution, IP address, and other technical information, as well as navigation events and session information as you interact with our Services," "When you access our Services, we use cookies and other tracking technologies to . . . Store information about your preferences . . . ; contact you . . . ; Advertise new content, events, and services that relate to your interests; Provide you with more personalized content that is most relevant to your interest areas; and Recognize when you return to our Services."). Plaintiffs also allege how this data is traceable to an individual user. *See, e.g.*, *id*. ¶ 46 ("The c_user cookie shown above enables Facebook to identify a specific user when they are logged in to their account. The c_user cookie stores a user's unique ID, which is associated with their Facebook profile"); ¶ 57 ("The "cid" cookie above refers to "Client ID." It contains a unique identifier for the user's browser and device, that enables Google to link the user to their interactions with the website"); ¶ 69 (The data includes the "session_id," which is a unique identifier generated by TikTok to track a user's activity. This allows TikTok to correlate the user's behavior from a browsing session, including page views and conversions, to a particular user to enhance advertising measurement, attribution, and targeting."); ¶ 77 (alleging that Adobe's cookies use a "unique identifier to each site visitor, which enables Adobe to consistently recognize and track users across different sessions and domains"). These allegations are more than sufficient to allege standing. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 955–56 (N.D. Cal. 2023) (finding sufficient specificity where Plaintiff alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted because "[t]his makes it unlikely that Plaintiffs are simply implicating record information."); *see id*. ("Moreover . . . Plaintiffs have alleged that the collection of information is not anonymized. At the very least, Plaintiffs have made sufficient allegations to create a question of fact as to whether there is sufficiently personal information to support standing.").

The cases RAC cites in support of its argument that Plaintiffs' allegations are insufficiently detailed, are off base, or factually distinguishable. *See* Mot. at 7–8. Generally, each of these cases involved allegations less detailed than the ones at issue here. And in none did Defendants' allegedly offer plaintiffs the opportunity to "Decline" the at-issue tracking technology, only to disregard their

declination and permit tracking nonetheless. For instance, unlike in *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 U.S. App. LEXIS 31929, at *2–3 (9th Cir. Dec. 17, 2024), where the plaintiff failed to allege she did more than "visit" a website, here, Plaintiffs both allege that they browsed the Rent-A-Center Website. *See* CAC ¶¶ 98, 103, 106, 100 (alleging Plaintiffs browsed the Rent-A-Center Website). Similarly, where, in *Gabrielli v. Insider, Inc.*, No. 24-cv-01566 (ER), 2025 U.S. Dist. LEXIS 28788, at *11–14, *16–21 (S.D.N.Y. Feb. 18, 2025), the plaintiff alleged only that his IP address was collected, here, Plaintiffs allege that the Third Parties collected a vast array of data and Private Communications. RAC also cites to *Heiting v. FKA Distrib. Co.*, No. 2:24-cv-07314-HDV-AGR, 2025 U.S. Dist. LEXIS 20076, at *7 (C.D. Cal. Feb. 3, 2025), *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSx, 2024 U.S. Dist. LEXIS 232423, at *10 (C.D. Cal. July 12, 2024), *Posados v. Goodyear Tire & Rubber Co.*, No. 23-cv-0402-L-DDL, 2024 U.S. Dist. LEXIS 228992, at *9 (S.D. Cal. Dec. 13, 2024), which dismissed claims where the plaintiff failed to allege when she visited the website, whether she browsed the website, what information was collected, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized. Here, however, Plaintiffs allege when they visited the Rent-A-Center Website (CAC ¶¶ 98, 106), allege that they browsed the Website (¶¶ 98, 103, 106, 100), describe the extensive array of information and Private Communications transmitted to the Third Parties (¶¶ 6, 43–92), allege that this data is not anonymized (CAC ¶¶ 30, 31, 46, 57, 69, 77), and allege Plaintiffs were unaware of RAC's practices (CAC ¶¶ 100, 108).

Finally, RAC cites to cases for propositions that conflict with controlling case law or that are entirely inapposite. For instance, the proposition for which RAC cites *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 7139, at *5–6 (C.D. Cal. Jan. 8, 2025), that bare violations of CIPA are insufficient to confer standing, is directly contradicted by *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023): "the relevant law is settled" that when a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." Likewise, although RAC cites *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) in support of dismissing CIPA and invasion of privacy claims on Article III grounds based on lack of specificity, Plaintiffs' allegations here, that RAC permits

the Third Parties to collect and transmit Private Communications, such as likes, interests, and habits and connects them over multiple visits (CAC ¶¶ 30–31 ) and that the data sent to the Third Parties is not anonymized and may be used to track Plaintiffs across the internet (CAC ¶¶ 46, 57, 69, 77), comports with the Ninth Circuit's holding in *Facebook Tracking*—finding standing where the defendant "reveal[s] an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." 956 F.3d at 598–99. Finally, RAC cites *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *7–10 (C.D. Cal. Apr. 5, 2023), a factual challenge to standing where the plaintiff's claim was ultimately dismissed defendant submitted an affidavit showing no record of plaintiff using the chat function she allegedly used on a website. RAC offers no such factual support here. And because Plaintiffs allege that they visited and browsed the Rent-A-Center Website, *Byars* bears no relevance to this case.

Critically, none of RAC's cases involved allegations like here that RAC permitted the Third Parties to attach cookies to Plaintiffs' devices and browsers—permitting the Third Parties to obtain a host of information—the moment Plaintiffs accessed the Websites and before they could "Decline" cookies (which was a lie). Further, RAC's argument that Plaintiffs' allegations describing how the Websites functioned for Plaintiffs as well as *all* users who clicked "Decline" cookies, somehow undercuts Plaintiffs' allegations defies logic and—even if it did not—seeks an inference in RAC's favor to which it is not entitled. *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) ("When reviewing a [facial] dismissal pursuant to Rule 12(b)(1) . . . , 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party.'" (cleaned up)). Accordingly, Plaintiffs have alleged standing.

**B.    This Court has Specific Personal Jurisdiction over RAC.**

Plaintiffs have adequately pled specific personal jurisdiction over RAC. The applicable test boils down to whether (1) RAC purposefully directed its activities at the forum or its residents, (2) Plaintiffs' claims arise out of or relate to that conduct, and (3) exercising jurisdiction over RAC would be reasonable, i.e., comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

1   *L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*). Because RAC's personal jurisdiction

2   challenge is based on written materials rather than an evidentiary hearing, Plaintiffs need only make a

3   prima facie showing of jurisdictional facts to withstand the motion to dismiss. *See Mavrix Photo, Inc.*

4   *v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

5         To determine whether a defendant "purposefully directs his activities at a forum state," courts

6   apply the "*Calder* effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* requires that "the

7   defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state,

8   (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell*

9   *LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quotations omitted). However,

10  "[t]hough the emergence of the internet presents new fact patterns, it does not require a wholesale

11  departure from [a court's] approach to personal jurisdiction before the internet age." *Herbal Brands*,

12  72 F.4th at 1093; *see also Briskin*, 2025 U.S. App. LEXIS 9410, at *14 n.3 (expressing agreement

13  with *Herbal Brands*).

14        Numerous California district court cases have ruled that where a plaintiff adequately alleges a

15  CIPA or intrusion-based claim, tortious conduct can satisfy the "intentional act" requirement for

16  specific jurisdiction. *See, e.g., Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 838 (N.D. Cal. 2021)

17  (recognizing case law finding that "the 'intentional act' standard is easily satisfied where plaintiff

18  alleges wiretapping claims," but granting motion to dismiss because plaintiffs "did not plausibly plead

19  wiretapping, the plaintiffs have not met their *prima facie* burden to establish specific personal

20  jurisdiction."); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 513 (C.D. Cal. 2021) (allegations regarding

21  session replay software supporting CIPA and invasion of privacy claims sufficient to support

22  "intentional act"). Indeed, "each of [RAC's] actions in its regular course of business is an intentional

23  act." *Briskin*, 2025 U.S. App. LEXIS 9410, at *39. Here, RAC regularly conducts business in

24  California and its tortious conduct took place in California. Further, Plaintiffs allege that RAC

25  intentionally permitted the Third Parties to place cookies on Plaintiffs' devices and browsers despite

26  representing that Plaintiffs could "Decline" such cookies and despite the fact that Plaintiffs did decline

27  those cookies. CAC ¶¶ 98–104, 106–112. Plaintiffs both reside in California—making it the location

28

of the devices on which the cookies were placed. *Id*. ¶¶ 6–7. Accordingly, Plaintiffs have satisfied the intentional act requirement for specific jurisdiction.

RAC argues that "Plaintiffs do not allege that Defendants set out to operate a deceptive website," and thus do not satisfy the first prong of the *Calder* effects test. Mot. at 12. This is simply false. The Complaint alleges the intentional, tortious acts RAC undertook to enable the Third Parties to obtain Plaintiffs' data. CAC ¶¶ 22–26, 28–29 (describing RAC's intentional acts). Moreover, RAC claims that Plaintiffs do not meet the "intentional act" requirement of the *Calder* effects test because they did not specifically describe their browsing activity or allege that they were in California when they browsed the Websites. Mot. at 12. Both arguments lack merit. First, Plaintiffs allege that they each browsed the RAC Website after clicking "Decline" cookies and that RAC, nonetheless, caused cookies to be placed on their browsers and devices that transmitted a host of information to the Third Parties. CAC ¶¶ 100–03, ¶¶ 108–11. RAC simply ignores these allegations, then claims they do not exist. Second, Plaintiffs do in fact allege that they accessed the Website in California. *Id*. ¶ 162 ("The wiretapping of Plaintiffs and Class members occurred in California, where Plaintiffs and Class members accessed the Websites and where the Third Parties—as enabled by Defendant—routed Plaintiffs' and Class members' electronic communications to Third Parties' servers.").

The second part of the *Calder* effects test asks whether RAC's conduct was expressly aimed at the forum state. Although the Ninth Circuit has held that operating an interactive website alone is insufficient to establish express aiming, operation of that website combined with "something more" is sufficient. *Herbal Brands*, 72 F.4th at 1092–93. The Ninth Circuit's recent decision in *Briskin v. Shopify, Inc.*, clarifies what is required to show "something more" for purposes of an interactive website: "We therefore hold that an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." 2025 U.S. App. LEXIS 9410, at *46 (cleaned up); *see also Herbal Brands*, 72 F.4th at 1088 ("if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant has purposefully directed its conduct at the forum such that the exercise of personal jurisdiction may be appropriate.").

Plaintiffs' allegations track those the Ninth Circuit just determined were sufficient in *Briskin*. There, the Ninth Circuit concluded "that jurisdiction is proper because Shopify's allegedly tortious actions deliberately targeted Briskin in California: (1) Shopify concedes that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device; and (2) the complaint alleges that Shopify uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent." *Briskin*, 2025 U.S. App. LEXIS 9410, at *14. Here, Plaintiffs allege that RAC's Website collected information that allowed it to know that Plaintiffs' devices were located in California when it installed cookies on their devices. CAC ¶¶ 20, 21 (describing how websites receive IP addresses, which reveal a user's geolocation). Likewise, the Complaint alleges that RAC tortiously invaded consumers privacy when it deceived consumers into believing they were browsing privately while simultaneously enabling the Third Parties to attach cookies to their devices to compile consumer profiles for their profit. *See infra* § II.A. To the extent RAC suggests that it did not expressly aim its conduct at California because it operates nationwide and thus is agnostic as to the location of consumers, that argument is foreclosed. *See Briskin*, 2025 U.S. App. LEXIS 9410, at *42 (holding that "the Supreme Court has considered and rejected the argument that because a nationwide company is everywhere, it is jurisdictionally nowhere except in its principal place of business and state of incorporation." (citing *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 355, 363, 141 S. Ct. 1017 (2021))). Nor are Plaintiffs required to show any sort of "differential treatment of the forum." *Id*. at *45–46 ("We now take this opportunity to overrule *AMA* and any other cases that require some sort of differential treatment of the forum state for a finding of 'express aiming' of the defendant's allegedly tortious conduct."). In sum, because Plaintiffs allege that RAC deliberately targeted Plaintiffs in California, they have demonstrated that RAC expressly aimed its conduct at this forum.

The final prong of the *Calder* test considers whether a defendant's actions "caused harm that it knew was likely to be suffered in the forum." *Yahoo!*, 433 F.3d at 1206 (internal citation omitted). "The touchstone of this requirement is not the magnitude of the harm, but rather its foreseeability." *Id*. at 1207. There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum state. *Id*. Here, it was foreseeable that RAC's actions would cause harm in California. Plaintiffs

allege that RAC uses the Websites to advertise and sell its products to California residents in the regular course of its business—meaning that its "contacts are its own choice and not random, isolated, or fortuitous." CAC ¶ 17; *Briskin*, 2025 U.S. App. LEXIS 9410, at \*46. Further, RAC's Privacy Policy includes California-specific language, directing California residents to a specific California Privacy Policy, indicating that it knew that California-based users would access its Websites. *See* Request for Judicial Notice Exs. 1, 2. In sum, Plaintiffs have met every element of the *Calder* effects test and have thus established the express aiming element of personal jurisdiction.

Plaintiffs likewise have brought claims which "arise[] out of or relate[] to the defendant's forum-related activities." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). In *Briskin*, the Ninth Circuit found that plaintiff's claims

> "ar[ose] out of" Shopify's contact with Briskin's device, which Shopify allegedly knew was in California. Briskin's claims also "relate to" Shopify's California contacts because Briskin alleges the kind of injury that would "tend to be caused" by Shopify's contacts with California merchants and consumers. In particular, Shopify's installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries. Briskin's claims therefore satisfy the second requirement for specific jurisdiction.

*Briskin*, 2025 U.S. App. LEXIS 9410, at \*52 (citation omitted). Here too, the forum-related activity—RAC's operation of the Websites to sell goods in California—enabled installation of cookies onto unsuspecting Californian's devices and extracted Personal Communications from those consumers. Both Plaintiffs visited and browsed the Rent-A-Center Website, through which RAC engages in its business and unlawful conduct. Accordingly, Plaintiffs have established the second requirement of personal jurisdiction.

"The plaintiff has the burden of proving the first two prongs." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). Then, "'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017). But RAC has presented no "compelling case" that personal jurisdiction here is unreasonable. "The personal jurisdiction inquiry rests on the concept of "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (citation and internal quotation mark omitted). If a defendant chooses to conduct "a part of its general business"

in a particular forum, it is fair to subject that defendant to personal jurisdiction in that forum. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 779–80 (1984) (holding that, because the defendant was "carrying on a part of its general business" in the state, it was fair to subject the defendant to jurisdiction for a claim arising out of that activity (internal quotation marks omitted)); *see also Herbal Brands*, 72 F.4th at 1093 (discussing the same). Accordingly, Plaintiffs have made a *prima facie* showing of personal jurisdiction.

### C.    RAC's 12(b)(6) Arguments Fail.

#### 1.    Plaintiffs have adequately pled privacy and intrusion upon seclusion claims.

Claims for common law invasion of privacy and intrusion upon seclusion consist of two key elements: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009).

Here, Plaintiffs had a reasonable expectation of privacy in their private communications on the Websites because RAC represented to them that their browsing activity and Private Communications would remain private if they elected to decline cookies. *Facebook Tracking*, 956 F.3d at 603–04 (finding a reasonable expectation of privacy from "allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding a reasonable expectation of privacy where Google collected a "large amount of personal information from users' smartphones"). RAC argues that Plaintiffs do not allege that it permitted cookies to be placed on their devices by Third Parties or that any personal or private information was actually tracked, collected, and transmitted to any Third Party. Mot. at 14–15. This is simply untrue. The Complaint clearly contains such allegations. *See, e.g.*, CAC ¶¶ 1–3, 30–32, 35–37, 98–104, 106–12. And to the extent RAC argues that Plaintiffs' allegations must be more specific, the Ninth Circuit has explicitly rejected such an argument. *Facebook Tracking*, 956 F.3d at 603 rejecting "Facebook['s] argu[ment] that Plaintiffs need to identify specific, sensitive information that Facebook collected, and that their more general allegation that Facebook acquired 'an enormous amount of individualized data' is insufficient. However, both the nature of collection and the sensitivity of the collected information are important."). Indeed, the manner in which the data

was collected is also significant. *Id*. Here, RAC tricked Plaintiffs and Class members into believing that their browsing would be private through misrepresentation and deceit—violating social norms. RAC's suggestion that Plaintiffs and Class members had no reasonable expectation of privacy when RAC itself told them to expect privacy asks this Court to believe that lies and deceit do not violate social norms. This Court should reject such a cynical position.

Likewise, Plaintiffs have shown that RAC's intrusion was highly offensive. "Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *Facebook Tracking*, 956 F.3d at 606 (citation omitted).

Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994); *see also Facebook Tracking*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry before concluding it "cannot be resolved at the pleading stage"); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal. May 21, 2021)**Error! Bookmark not defined.** ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to *Facebook*"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("[u]nder California law, courts must be reluctant to reach a conclusion at the pleading state about how offensive or serious the privacy intrusion is"); *Opperman v. Path, Inc*., 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) ("[t]he offensiveness inquiry is fact-specific"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury"). Here, the jury is entitled to consider all the circumstances surrounding RAC's conduct, including the fact that RAC lied about not tracking visitors, to determine whether RAC's invasion of

1    privacy was highly offensive.

2              **2.      Plaintiffs state a wiretapping claim under the penal code.**

3         Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which prohibits

4    aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping,

5    (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire,

6    [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of

7    engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598,

8    2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up).

9         Here, Plaintiffs allege that RAC has aided the Third Parties in their CIPA violations. RAC's

10   arguments to the contrary, that Plaintiffs have not adequately alleged intent or the contents of their

11   communications, are spurious.

12        First, Plaintiffs have adequately alleged intent. Decisions from this Circuit consistently hold

13   that the intent element is satisfied by pleading that Defendant intentionally (i.e., not accidentally)

14   "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v.*

15   *Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13,

16   2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that

17   [Defendant] violated section 631 by enabling [a third party's] wrongdoing); *Kotlarsz v. Integrity*

18   *Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal.

19   Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless

20   of specific intent, courts routinely find plaintiffs' privacy allegations sufficient when plaintiff alleges

21   that Defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S.

22   Dist. LEXIS 144579, at *5. Here, it is even more egregious because RAC expressly promised that it

23   would not act as it did.

24        The intent requirement in the analogous Wiretap Act is also instructive. "The Ninth Circuit has

25   rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know

26   that [its] conduct is unlawful . . . Rather, the statute only requires 'an intentional act, defined as an act

27   that is being done on purpose.'" *Shahnaz Zarif*, 2025 U.S. Dist. LEXIS 26519, at *20. RAC relies on

28   *Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *11 (N.D. Cal.

Oct. 21, 2024), to support its interpretation of CIPA's intent requirement. *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable for aiding a third-party payment processor to "incorporate[] customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" in violation of the statute. *Id.* at *1. The Court concluded that the plaintiff failed to allege that the defendant was "acting with the third party in order to have the third party perform acts that violate the statute." *Id*. at *12. In other words, the Court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it intended only to enable the third party to process payments for its Website. Here, RAC integrated the Third Parties' software that placed and transmitted cookies into its Websites to obtain user data for advertising and analytics functions. CAC ¶ 22. RAC did not disable this software or prevent the Third Parties from obtaining user data even after representing to Plaintiffs and Class members that they could "Decline" cookies. *Id*. ¶¶ 32–38. RAC cannot claim that it did not intend to enable the Third Parties to wiretap and eavesdrop on users' Personal Communications since it installed the Third Party code on its Websites to do exactly that.

As to RAC's second argument, courts have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g., Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents were not record information such as her name and address"); *James*, 701 F. Supp. 3d at 956 (same); *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (acknowledging that, "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication"). Here, Plaintiffs have alleged that the communications were collected through wrongfully placed cookies on RAC's Websites. CAC ¶¶ 26, 40–41 (alleging Private Communications collected through wrongfully placed cookies); ¶¶ 43–92 (alleging the types of data and communications collected by the wrongfully placed Third Parties' cookies). This is sufficient.

### 3. Plaintiffs properly plead a "pen register" claim under section 638.51.

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the Third Parties' cookies and the corresponding software code RAC installed that allows the Third Parties to attach cookies operate as "pen registers" because they are processes that record users' IP address and user-agent information, which is not the content of the electronic communications being transmitted from users' computers or smartphones to the Websites.

In its Motion, RAC reiterates the same claim that Plaintiffs do not allege information about their visits to the Websites. Mot. at 19. Again, this is simply untrue. *See* Compl. ¶¶ 98–104, 106–12 (describing Plaintiffs' visits to the Rent-a-Center Website and the unauthorized placement of cookies on their devices) ¶ 26 (describing how the Third Parties obtained Private Communications from Plaintiffs including, among other things, their IP addresses); ¶ 170 (alleging that RAC designed the Website to enable the Third Parties to place cookies on Plaintiffs' and Class members' browsers and devices to transmit Plaintiffs' and Class members' IP address and Private Communications); ¶ 6 (describing the extensive information transmitted to the Third Parties); ¶ 31 (Rent-A-Center Privacy Policy disclosing that cookies used on the Websites collect a user's "IP address"); ¶ 61 (data sent to Google contains the user's IP address); ¶ 67, 73 (data sent to TikTok contains the user's IP address); ¶ 79 (data sent to Adobe contains the user's IP address); *see also* CAC ¶ 91. Accordingly, Plaintiffs have pled a cause of action under § 638.50 of CIPA.

### D. Plaintiffs' Fraud and Misrepresentation Claims Satisfy Rule 9(b).

"The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760,

at *7 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted)). "In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Brown v. Natures Path Foods, Inc*., No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022) (Gilliam, J.).

Despite RAC's assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendants' fraud. They allege that Defendants (the who), fraudulently stated that users could "Decline" cookies (the what), during the class period (when), on the Websites (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *E.g.*, CAC ¶¶ 1–3, 32, 35–37, 98–104, 106–12 (alleging fraud); ¶¶ 22–26, 28–29 (alleging intentional conduct); ¶¶ 101, 103, 109, 111 (alleging reliance); ¶¶ 104–05, 112–13 (alleging injury). Plaintiffs further allege that the statement that they could "Decline" cookies was false and misleading because RAC had in fact already permitted the Third Parties to place cookies on Plaintiffs' browsers and continued to do so even after Plaintiffs clicked "Decline." Plaintiffs further allege that RAC acted intentionally and with knowledge (*id*. ¶¶ 22–26, 28–29), Plaintiffs relied on the misrepresentations to their detriment (*id*. ¶¶ 101, 103, 109, 111), and that they were injured as a result (*id*. ¶¶ 104–05, 112–13).

### E.    Plaintiffs' Unjust Enrichment Claim Properly Pled.

The Ninth Circuit has allowed independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook Consumer Priv.*, 402 F. Supp. 3d at 803 (permitting an independent unjust enrichment claim alongside valid breach of contract and fraud claims). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiffs may bring an unjust enrichment claim because they allege that RAC benefited from using their Private Communications

and that otherwise their remedies at law are inadequate. CAC ¶¶ 27, 30–31 (describing ways in which RAC benefited from the use of cookies); ¶ 198 (alleging no adequate remedy at law). Indeed, if Plaintiffs are unable to pursue their other claims, they would have not adequate legal remedy. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (finding that plaintiffs' allegations that defendant benefitted from their information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain was sufficient to plead unjust enrichment).

### F.    Plaintiffs Sufficiently Plead Trespass to Chattels.

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "establish a significant reduction in service constituting an interference with the *intended functioning* of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (emphasis added).

Here, Plaintiffs easily plead each element by alleging that RAC intentionally, and contrary to Plaintiffs' express rejections, allowed the Third Parties to put cookies on their devices and browsers. CAC ¶¶ 22–26, 28–29 (describing intentional conduct), ¶¶ 33–38, 98–104, 106–112 (describing placement of cookies despite express rejection). RAC argues that Plaintiffs have not alleged "significant" interference with their devices. Mot. at 22. But RAC's unauthorized use resulted in damage by reducing storage, disk space, and performance of Plaintiffs' and other Class members

computing devices. CAC ¶ 203. This includes reducing the intended function of the system—i.e. Plaintiffs' ability to use their devices and browsers without being tracked by the Third Parties.

The cases RAC cites do not address this type of claim and are thus distinguishable. *See Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (no allegations of impaired intended function); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (no allegations of an interference with the intended functioning of the system); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 124 (N.D. Cal. 2020) (allegations of only a 2–5 minute delay in the login process); *Intel Corp.*, 30 Cal. 4th at 1347 (on motion for summary judgment, no evidence of damages or significant inference).

### G.    Dismissal on the Basis of Required Joinder is Improper.

RAC's arguments for dismissal under Rule 12(b)(7), for a purported failure to join a necessary party under Federal Rule of Civil Procedure 19, are inadequate both in fact and law. As an initial matter, although joinder may be required where the absent party is a "required party" to the litigation, dismissal of an action is not the exclusive—or in this case the correct—remedy for a failure to join a required party. *See* Fed. R. Civ. P. 19; *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005). Rather, Rule 19 imposes a three-step inquiry: (1) whether an absent party is a required party; (2) whether, if a party is a required party, it is feasible to join that party; and (3) if joinder is not feasible, whether the case can proceed without the absent party, or whether the absent party is indispensable such that the action must be dismissed. *See EEOC*, 400 F.3d at 779–80. RAC simply states that the Third Parties are necessary and that this requires dismissal. Such an analysis is incomplete, and in any event wrong at every step.

"Under Rule 19, a 'required party' must be joined as a party in an action if doing so is 'feasible.'" *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (citing Fed. R. Civ. P. 19). At the outset, noticeably absent from RAC's Motion is any contention that joining the Third Parties is not feasible. Absent such a showing, the relief RAC seeks—dismissal—is not available to them.

Even so, the Third Parties are not required in this action. Rule 19(a)(1) establishes two categories of required parties. *Id.* "First, under Rule 19(a)(1)(A), a party is required if 'in that person's absence, the court cannot accord complete relief among existing parties.'" *Id.* (quoting Fed. R. Civ. P. 19). Second, under Rule 19(a)(1)(B), "two conditions must be satisfied for a party to qualify as a

'required party.'" *Id*. "First, the party must 'claim[] an interest relating to the subject of the action.'" *Id*. (quoting Fed. R. Civ. P. 19(a)(1)(B)). "Second, the party must be 'so situated that disposing of the action in the person's absence' may have one of the two consequences"—either a possibility that disposing of the action in the person's absence will 'as a practical matter impair or impede the person's ability to protect the interest,' or a possibility that doing so will 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.'" *Id*.

First, the Third Parties' absences from this action do not preclude the court from effecting relief between extant parties. *See Zeff v. Greystar Real Estate Partners, LLC*, No. 20-cv-07122-EMC, 2021 U.S. Dist. LEXIS 30615, at *9 (N.D. Cal. Feb. 18, 2021) (citing Moore's Fed. Prac. — Civ. § 19.03[2][b][ii]). Indeed, RAC does not bother to make such an argument. The "'complete relief' principle in Rule 19(a)(1)(A) has been construed narrowly, i.e., joinder has only been found to be required where: nonjoinder precludes the court from effecting relief not in some overall sense, but between extant parties. In other words, joinder is required only when the absentee's nonjoinder precludes the court form rendering complete justice among those already joined." *Id*. Here, RAC suggests "Plaintiffs could conceivably sue each Third Party in a separate similar action." But this consideration is irrelevant to the "complete relief" analysis of Rule 19.

Second, RAC argues that the Third Parties are "required parties" under Rule 19(a)(1)(B) but has not shown or even suggested that the Third Parties have "claim[ed]" an interest in the subject matter of this action. Here, because required joinder is "contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (emphasis added), RAC's failure to make such a showing is dispositive.

Even had the Third Parties claimed an interest in this action, RAC still fails to establish that "disposing of the action in the [Third Parties'] absence[s]" will "as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Although to succeed in their claims against RAC, Plaintiffs must prove that the Third Parties engaged in misconduct, that does not create a "legally protected interest in this suit." *See Ward*, 791 F.3d at 1050 (holding that, the fact that

the complaint portrayed a non-party as the central player in an alleged antitrust conspiracy does not demonstrate that the non-party is a required party and that "[i]n many cases, an absent antitrust co-conspirator will not have interests that warrant protection under Rule 19(a)(1)(B)(i), even if it is alleged to have played a central role in the conspiracy, and even if resolution of the action will require the court to evaluate the absent party's conduct"); *Zeff*, 2021 U.S. Dist. LEXIS 30615, at *9 ("As noted in *Ward*, generally joint tortfeasors and co-conspirators need not all be joined in the same lawsuit.") (citing *Ward*, 791 F.3d at 1048)). Further, even if the Court were to assume that the Third Parties had a sufficiently protected interest at stake, that interest would not be impaired by this litigation. *Zeff*, 2021 U.S. Dist. LEXIS 30615, at *9. Where the absent party is not bound by the litigation, the Court must "assess how [their] interests may be impaired when, as a non-party, the outcome of the action will not bind the absent party in future proceedings." *Id.* (quoting *Ward*, 791 F.3d at 1049–50). RAC has failed to demonstrate any such impairment, because the Third Parties would not be bound by any judgment which this Court issued, and because RAC has not identified any other interest of the Third Parties that may be impaired.

### H.    Plaintiffs Request Leave to Amend If Necessary.

If the Complaint is dismissed, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). RAC argues that amendment would be futile because Plaintiffs lack standing to pursue their claims in federal court, but Plaintiffs have suffered a concrete injury-in-fact as addressed above. Should this Court find any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies.

## IV.    CONCLUSION

For the foregoing reasons, RAC's motion to dismiss must be denied.

Dated: April 21, 2025

**GUTRIDE SAFIER LLP**

*/s/Patrick J. Branson*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*