TOMIO B. NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
JEFFREY A. TOPOR (SBN 195545)
Jeff.Topor@wbd-us.com
GENEVIEVE WALSER-JOLLY (SBN 262784)
Genevieve.Walser-Jolly@wbd-us.com
MICHELLE CATAPANG (SBN 308038)
Michelle.Catapang@wbd-us.com
KRISTINA HOVSEPYAN (SBN 340674)
Kristina.Hovsepyan@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

JONATHAN GABRIELLI and JAIME AYALA, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

vs.

UPBOUND GROUP, INC.; and RENT-A-CENTER, INC.,

Defendants.

CASE NO.: 4:25-cv-00631-HSG

**DEFENDANTS UPBOUND GROUP, INC. AND RENT-A-CENTER'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Date: Thursday, June 5, 2025
Time: 2:00 p.m.
Place: Courtroom 2, 4th Floor
Judge: Hon. Haywood S. Gilliam, Jr.

# TABLE OF CONTENTS


I. ARGUMENT ..... 1

A. Plaintiffs Lack Article III Standing ..... 1

B. The Court Lacks Personal Jurisdiction Over Defendants ..... 4

1. Plaintiffs' Intentional Act Argument is Off Target ..... 4

2. Plaintiffs Have Not Sufficiently Alleged Defendants Expressly Aimed Their Alleged Misconduct at California ..... 7

C. Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Fail ..... 9

D. Plaintiffs' Wiretapping Claim Fails ..... 10

E. Plaintiffs' Pen Register Claim Fails ..... 11

F. Plaintiffs' Fraud Claim Fails ..... 12

G. Plaintiffs' Unjust Enrichment Claim Fails ..... 13

H. Plaintiffs' Trespass to Chattels Claim Fails ..... 13

I. Plaintiffs Have Failed to Join Necessary Parties ..... 14

J. Leave to Amend Should Not be Granted ..... 15

II. CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*A.J. v. LMND Med. Grp.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .................................................. 13

*Briskin v. Shopify, Inc.*
2025 U.S. App. LEXIS 9410 (9th Cir. Apr. 21, 2025).................................................. *passim*

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)......................................................................... 14

*Brown v. Natures Path Foods, Inc.*,
2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .................................................. 12

*Byars v. Tire*,
654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2024) .............................................................. 11

*Cooley v. First Data Merc. Servs., LLC*,
2020 U.S. Dist. LEXIS 265810 (N.D. Ga. Feb. 7, 2020)..................................................... 15

*Cordero v. Sportsman's Warehouse, Inc.*,
2025 U.S. Dist. LEXIS 72337 (D. Utah Apr. 15, 2025)......................................................... 1

*CP Nat'l Corp. v. Bonneville Power Admin.*,
928 F.2d 905 (9th Cir. 1991) ...................................................................................... 15

*Daghaly v. Bloomingdales.com, LLC*,
2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024)..................................................... 1, 2

*Doe v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)............................................................ 11, 13, 14

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)............................................................................ 6

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)......................................................................... 10

*Hughes v. Vivint, Inc.*,
2024 U.S. Dist. LEXIS 232423 (C.D. Cal. 2024) ............................................................... 2

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........................................ 3, 10

*In re Google Assistant Priv. Litig.,*
546 F. Supp. 3d 945 (N.D. Cal. 2021) ........................................ 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) ........................................ 3

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................ 13, 14

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................ 10, 12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........................................ 11

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ........................................ 4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........................................ 13

*Khamooshi v. Politico LLC*, Case,
2025 U.S. Dist. LEXIS 92788 (N.D. Cal. May 13, 2025) ........................................ 3

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................ 10

*Martin v. Sephora USA, Inc.*,
2023 U.S. Dist. LEXIS 55930 (E.D. Cal. 2023) ........................................ 11

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) ........................................ 3

*Popa v. PSP Grp., LLC*,
2023 U.S. Dist. LEXIS 191053 (W.D. Wash. Oct. 24, 2023) ........................................ 3

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 U.S. Dist. LEXIS 228992 (S.D. Cal. Dec. 13, 2024) ........................................ 2

*Rodriguez v. Autotrader.com, Inc.*,
2025 U.S. Dist. LEXIS 7139 (C.D. Cal. Jan. 8, 2025) ........................................ 1

*Rodriguez v. Autotrader.com, Inc.*,
2025 U.S. Dist. LEXIS 70074 (C.D. Cal. Apr. 4, 2025) ........................................ 1

*Saleh v Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 6

*Sewell v. Mentor Worlwide, LLC*,
2019 U.S. Dist. LEXIS 145920 (C.D. Cal. Aug. 27, 2019) .......... 15

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 4

*Shah v. Capital One Fin. Corp.*,
2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) .......... 13

*Six v. IQ Data Int'l Inc.*,
129 F.4th 630 (9th Cir. 2025) .......... 4

*Stark v. Stall*,
2019 U.S. Dist. LEXIS 132814 (S.D. Cal. Aug. 7, 2019) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 4

*Ward v. Apple Inc.*,
791 F.3d 1041 (9th Cir. 2015) .......... 15

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012) .......... 5

*Williams v. DDR Media, LLC*,
2023 U.S. Dist. LEXIS 145489 (N.D. Cal. Aug. 18, 2023) .......... 10

*Zarif v. Hwareh.Com, Inc.*,
2024 U.S. Dist. LEXIS 52900 (S.D. Cal. March 25, 2024) .......... 5

*Zeff v. Greystar Real Estate Partners, LLC*,
2021 U.S. Dist. LEXIS 30615 (N.D. Cal. Feb. 18, 2021) .......... 15

**State Cases**

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 14

**Statutes**

Cal. Pen. Code § 631(a) .......... 10, 11

# I. ARGUMENT

## A. Plaintiffs Lack Article III Standing

The overwhelming weight of authority supports dismissal of Plaintiffs' claims because they lack Article III standing.[1] The Complaint does nothing more than describe Plaintiffs' view of how the internet works and how communications between a "user" and a website might operate, in the abstract. Whatever may happen in the abstract, however, Plaintiffs have not adequately alleged what actually did happen (if anything) when they allegedly visited Defendants' website. This case is no different than *Daghaly v. Bloomingdales.com, LLC*, 2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024), where the Ninth Circuit affirmed dismissal of CIPA and related claims for lack of Article III standing based on equally flimsy allegations.

There, like here, plaintiff alleged she "visited" the website and was "subjected to the interception of her Website Communications," which were allegedly transmitted to third parties. *Id*. at **2-3. Describing the allegations about her interactions with the site as "sparse," the Court noted plaintiff "[did] not allege that she herself actually made any communications that could have been intercepted once she had accessed the website." *Id*. Moreover, plaintiff did not allege "that she made a purchase, entered text, or took any actions other than simply opening the webpage and then closing it." *Id*. She failed to adequately allege a concrete and particularized injury. *Id*.

Similarly, the sparse allegations that Plaintiffs' "Private Communications" were "tracked" when they "browsed" Defendants' website on "one or more" occasions, Dkt. No. 1 at ¶¶ 98, 103, 106, 111, is insufficient to confer standing.[2] Plaintiffs do not explain what, if anything, they did

[1] *See* Dkt. No. 14 at 7;16-8:25 (citing authorities); *Cordero v. Sportsman's Warehouse, Inc.*, 2025 U.S. Dist. LEXIS 72337, at **10-11 (D. Utah Apr. 15, 2025) (Plaintiff failed to allege what "personal information" was shared; "He did not create an account or make a purchase. He did not provide Defendants with his name, address, email, or payment card information").

[2] Plaintiff Gabrielli—who has filed virtually identical lawsuits (Dkt. No. 14 at 1 n.1)—also lacks Article III standing because he is a "tester" plaintiff who "seeks out legal violations and files lawsuits to ensure legal compliance," and thus does not have an expectation of privacy. *See Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 7139, *2 (C.D. Cal. Jan. 8, 2025); *Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 70074, *3 n. 2 (C.D. Cal.

when they allegedly "browsed." Plaintiffs do not identify what pages they allegedly visited or what products they searched for, viewed, or put in their cart—if any. They do not allege they entered any personal information on the site, or that they "made a purchase, entered text, or took any actions other than simply opening the webpage and then closing it." *Daghaly*, 2024 U.S. App. LEXIS 31929 at *3. They do not allege what private or personal information, if any, was captured while they were on the site, let alone what was shared.

The references to Defendants' privacy policies and allegations about the sites' software capabilities do not change the result. *See* Dkt. No. 21 at 8-10. Again, these are generic allegations about the types of data that cookies "can" or "may" capture, Dkt. No. 1 at ¶¶ 30-31, which say nothing about what information, if any, was captured during Plaintiffs' alleged site visits.[3] *See Daghaly*, 2024 U.S. App. LEXIS 31929 at *2 ("general allegations about how Bloomingdales.com intercepts website visitors' communications" insufficient to state concrete injury); *Hughes v. Vivint, Inc.*, 2024 U.S. Dist. LEXIS 232423, *10 (C.D. Cal. July 12), adopted as final ruling 2024 U.S. Dist. LEXIS 232422 (C.D. Cal. Aug. 5, 2024) (allegation that software "is designed to capture" "phone number[s]" and "email" insufficient where plaintiff did not allege she provided that information); *Posadas v. Goodyear Tire & Rubber Co.*, 2024 U.S. Dist. LEXIS 228992, **8-9 (S.D. Cal. Dec. 13, 2024) ("generalized" and "conclusory" allegations that technology "is capable of capturing private data" are "insufficient" to establish concrete injury). The general allegations about how cookies function to serve targeted advertisements, Dkt. No. 21 at 8-9, are also irrelevant as Plaintiffs do not allege they received targeted advertisements following their site visits.

Plaintiffs argue that a bare CIPA violation suffices to confer Article III standing, relying

Apr. 4, 2025) (dismissing pen register claim; "tester" plaintiff had no reasonable expectation of privacy).

[3] Defendants' privacy policies, even if assumed true, establish that any data collection would vary based on the site visitor, highlighting the need for more specific allegations. *See* Dkt. No. 1 at ¶ 30 ("We *usually* aggregate the data for review but *in some cases* we *may* collect information on content you have viewed . . ."; "These cookies . . . *may* combine information [] collected from our website with other information . . . *In some cases*, we *can* associate cookie information with an identifiable [sic] individual").

on *In re Facebook Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020). That case, however, predates and does not account for *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417, 427 (2021), which explained that "under Article III, an injury in law is not an injury in fact" and held that the asserted harm must have "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *See Khamooshi v. Politico LLC*, Case No. 3:24-cv-07836-SK, 2025 U.S. Dist. LEXIS 92788, *10 (N.D. Cal. May 13, 2025) (dismissing for lack of standing and rejecting reliance on *Facebook Tracking* because "[a] violation of CIPA, like a constitutional violation, does not automatically give rise to a concrete injury. As in *Phillips* [*v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023)], the information at issue here—an IP address—is not sufficiently private or personal to be analogous to the type of harm recognized in traditional privacy torts. Even assuming Plaintiffs have alleged an injury in law, they have not alleged an injury in fact. *See TransUnion*, 594 U.S. at 427.").

The Third Circuit's decision in *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) ("*Google Cookie Litig.*") is similarly unpersuasive as it predates *TransUnion*.[4] Moreover, both *Facebook Tracking* and *Google Cookie Litig.* challenged conduct that extended far beyond Defendants' alleged conduct here. *See Facebook Tracking*, 956 F.3d at 598-99 (alleging Facebook captured extensive information about Facebook user's browsing activity on third-party websites and created detailed personally-identifiable profiles that revealed their "likes, dislikes, interests, and habits"); *Google Cookie Litig.*, 934 F.3d at 321, 325 (Google allegedly bypassed plaintiffs' cookie blockers and placed tracking cookies on their web browsers, thereby collecting private data that contained personal information); *see also Popa v. PSP Grp., LLC*, 2023 U.S. Dist. LEXIS 191053 at *15 (W.D. Wash. Oct. 24, 2023) (distinguishing *Facebook Tracking*); *Khamooshi*, Case No. 3:24-cv-07836-SK, Dkt. No. 48 at

[4] By contrast, the cases cited by Defendants in support of their argument that Plaintiffs lack Article III standing are subsequent to and apply *TransUnion*. *See* fn. 2, *supra*.

8:7-15 (same).[5]

Here, Plaintiffs have not adequately alleged the Defendants (or the third parties) captured any protectable information about them during their alleged site visits, or used any data collected to learn their identities and build any detailed user profiles. Plaintiffs do not have Article III standing.

**B. The Court Lacks Personal Jurisdiction Over Defendants**

Plaintiffs have not alleged facts sufficient to satisfy the first prong of the specific jurisdiction inquiry—the purposeful direction prong—because they do not allege Defendants committed an intentional act or expressly aimed their alleged misconduct at California. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). The Ninth Circuit's new decision in *Briskin v. Shopify, Inc.*, __ F.4th __, 2025 U.S. App LEXIS 9410 (9th Cir. Apr. 21, 2025) (*en banc*), does not save them.

**1. Plaintiffs' Intentional Act Argument is Off Target**

The crux of Plaintiffs' Complaint is that Defendants allegedly falsely represented website visitors could decline cookies when visiting the site. Dkt. No. 1 at ¶¶ 1-2; *see* Dkt. No. 21 at 1:2-6, 3:14. Now, Plaintiffs focus on a different intentional act, arguing Defendants "unlawfully and intentionally allowed third parties to place non-essential tracking cookies" on the devices of visitors who declined cookies. Dkt. No. 21 at 1:13-15. They say Defendants "voluntarily—i.e., intentionally—integrated 'third-party resources' from the Third Parties into the Website's

[5] "Plaintiffs acknowledge *TransUnion*, but do not grapple with it, and they wrongly equate an alleged injury in law with an injury in fact, an approach that *TransUnion* expressly rejected. Instead, they rely (Dkt. No. 21 at 7:25-26) on two inapposite cases. In *Six v. IQ Data Int'l Inc*., 129 F.4th 630 (9th Cir. 2025), the court held that a debtor had standing because a collector sent him a letter after he advised he was represented by counsel, which was an injury directly analogous to the common law tort of intrusion upon seclusion. Plaintiffs here do not and cannot argue that cookie usage intruded upon their seclusion. And in *Jones v. Ford Motor Co*., 85 F.4th 570, 574 (9th Cir. 2023), the court held that two consumers had standing to sue over data collection by a car maker's "infotainment system" because its surreptitious collection of "all text messages and call logs" from their "cell phones" was a statutory violation that codified "a common law privacy right." Plaintiffs here fail to allege facts that are remotely equivalent. The Supreme Court's analysis in *TransUnion* controls here."

programming," *id.* at 5:9-10, highlighting Defendants' alleged use of "the software code that caused placement of the cookies" on their sites and how that software code operates, what cookies are used for, and Defendants' statements about cookies in their "Cookie" and "Privacy" policies, *see id.* at 5:10-7:21. None of this is relevant, however, because Plaintiffs do not challenge as *per se* unlawful the use of cookies and tracking technologies, or the collecting, aggregating, and analyzing of site visitor data. The only "intent" question that matters is whether Defendants intentionally designed the cookie banner to malfunction or intentionally refused to honor site visitors' choices to decline cookies.[6]

Plaintiffs concede Defendants "offer[] consumers a choice to browse *without* having [third-party] cookies and other tracking technologies placed on their browsers, allowing consumers to use the Websites without being tracked, followed, and targeted by third party data brokers or advertisers." *Id.* at 3:20-22 (italics in original). They say the "representation that users could 'Decline' cookies was false," because "even when users clicked 'Decline' cookies, RAC nevertheless permitted third parties to place" cookies on the "devices and browsers" of those who declined. *Id.* at 4:6, citing Dkt. No. 1 at ¶ 35.[7] Importantly, however, Plaintiffs <u>never</u> say Defendants <u>intentionally</u> misrepresented the ability of visitors to decline cookies or the functionality of the decline button. Because Plaintiffs do not allege Defendants set out to operate a deceptive website, they fail to satisfy the "intentional act" first prong of the *Calder* effects test. Plaintiffs also say "[n]umerous" district courts (they point to just two) "have ruled that where a plaintiff adequately alleges a CIPA or intrusion-based claim, tortious conduct can satisfy the

---

[6] "A defendant acts intentionally when it acts with an 'intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Zarif v. Hwareh.Com, Inc.*, 2024 U.S. Dist. LEXIS 52900k, * 6 (S.D. Cal. Mar. 25, 2024) (quoted citations omitted); *see Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) ("Accordingly, an intentional action is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results.").

[7] Plaintiffs say the cookies allowed "Plaintiffs' and Class Members' data to be transmitted." *Id.* at 4:9. The Complaint alleges "users," not "Plaintiffs," Dkt. 1 at ¶ 35. Plaintiffs consistently conflate the two categories. *Compare* Dkt. 21 at 4:18-24 *with* Dkt. 1 at ¶¶ 26, 36.

'intentional act' requirement for specific jurisdiction." *Id.* at 12:14-15. Neither case helps them.

In *Graham v. Noom*, the court simply quoted from plaintiffs' opposition to defendant's motion to dismiss before concluding plaintiffs had not met their burden of establishing specific personal jurisdiction. *See* 533 F. Supp. 3d 823, 838 (N.D. Cal. 2021).[8] The *Graham* court did not discuss the authorities plaintiff cited and did not "recogniz[e] case law" holding a plaintiff need merely allege tortious conduct in support of a "CIPA or intrusion-based claim" to demonstrate specific personal jurisdiction, as Plaintiffs argue. Dkt. No. 21 at 12:17.

And in *Saleh v Nike, Inc.*, 562 F. Supp. 3d 503, 509 (C.D. Cal. 2021), defendant FullStory, a "marketing software-as-a-service" company, provided defendant Nike with "session replay software" that Nike could use to record a visitor's movements on its website. The court held "Plaintiff has successfully alleged FullStory committed intentional acts for purposes of personal jurisdiction" because plaintiff alleged "FullStory intentionally recorded his activity" when it "installed the wiretap at issue on Nike's Website and purposefully intercepted electronic transmissions from users of Nike's website." *Id.* at 512-13 (internal quotation marks omitted). FullStory is like the third parties that Plaintiffs have identified in their Complaint. Unlike FullStory, though, Plaintiffs have not sued those third parties.

Curiously, Plaintiffs also argue each act Defendants allegedly undertook in the regular course of their business constitutes an intentional act, citing *Briskin*. *See* Dkt. No. 21 at 12:22-27. But *Briskin* did not address the "intentional act" component of the *Calder* effects test, which is understandable, given that the parties did "not dispute that the first and third factors required for a finding of purposeful direction are met." *Briskin,* 2025 U.S. App LEXIS 9410 at *35. *Briskin* has no bearing on whether Plaintiffs have sufficiently alleged an intentional act.[9]

Plaintiffs maintain they "allege[] the intentional, tortious acts RAC undertook to enable

---

[8] Plaintiffs in *Graham* cited the cases for the proposition that "three courts have held the 'intentional act' standard is *easily satisfied* where plaintiff alleges wiretapping claims." *Id.*

[9] Plaintiffs also argue that because they "both reside in California—making it the location of the devices on which the cookies were placed," they have satisfied the intentional act requirement. Dkt. 21 at 12: 27-13:2. This argument makes no sense – Plaintiffs' residence has no bearing on whether Defendants intentionally created a non-functioning cookie button.

the Third Parties to obtain Plaintiffs' data." *Id.* at 13:5-6, citing Dkt. No. 1 at ¶¶ 22-26, 28-29. Again, the only intentional conduct described in these paragraphs of the Complaint involves Defendants' alleged integration of the third parties' code into the website, which is not relevant. Plaintiffs have not alleged an intentional act sufficient to satisfy the first prong of the *Calder* effects test.

**2. Plaintiffs Have Not Sufficiently Alleged Defendants Expressly Aimed Their Alleged Misconduct at California**

As to the second-prong of the *Calder* effects test, Plaintiffs claim their allegations "track those the Ninth Circuit just determined were sufficient in *Briskin*." Dkt. 21 at 14:1. *Briskin* focused on the express aiming prong, but it did not change the test for determining purposeful direction.[10] It is distinguishable and does not help Plaintiffs.

In *Briskin*, the plaintiff purchased athletic wear from an online retailer in California. *See* 2025 U.S. App. LEXIS 9410 at *11. During the checkout process, the plaintiff submitted personal identifying information, as well as his credit card information, believing he was submitting it to the retailer, but was in fact submitting it to Shopify, an e-commerce platform. *See id.* at *11-13. "Shopify's involvement with the consumer" neither began nor ended with payment processing and shipping. *Id.* at *14. When a visitor to the retailer's site viewed an item, "Shopify installed tracking cookies onto" the visitor's device, "enabling it to track [the visitor's] behavior across Shopify's vast merchant network, including geolocation data, the identity of his browser, the IP address, along with the payment information, and where the transaction was completed." *Id.* at *15-16. Notably, Shopify conceded "[their] geolocation technology allowed [them] to know that"

---

[10] Explaining there must be "something more" than just operating a website to find a defendant has expressly aimed its activities at a forum, the Ninth Circuit surveyed its personal jurisdiction jurisprudence in the "ever-evolving world of e-commerce." 2025 U.S. App. LEXIS 9410 at *12. "Applying [its] traditional personal jurisdiction precedent," the Court "conclude[d] that jurisdiction is proper because Shopify's allegedly tortious actions deliberately targeted Briskin in California: (1) Shopify concedes that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device; and (2) the complaint alleges that Shopify uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent." *Id.*

a website visitor's "device was located in California when [they] installed cookies on [the] device." *See* Dkt. 21 at 14: 3-5, citing *Briskin*, 2025 U.S. App. LEXIS 9410 at *14.

Shopify allegedly stored visitors' "personal identifying information," assessed "the financial risks associated with individual consumers and their transactions," and created "user profiles using the collected data for the benefit of its merchants." *Id.* at *16. Shopify also allegedly "shared [Briskin's] personal identifying information with other third parties who store, analyze, and market that information to their customers as well." *Id.* The court concluded

> Briskin has made a prima facie showing of jurisdictional facts sufficient to establish that Shopify purposely directed its conduct toward California. As a part of its regular course of business, Shopify is alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only the California consumers' payment information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent. . . . . And here, it is clear that Shopify expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws.

*Id.* at *34-36. The *Briskin* court emphasized Shopify's role as an unknown and unwanted third-party: "Pre-internet, there would be no doubt that the California courts would have specific personal jurisdiction over a third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain." *Id.* at *36.

Defendants here do not concede they were able to geolocate Plaintiffs. And, contrary to Plaintiffs' argument, paragraphs 20 and 21 of their Complaint do <u>not</u> allege Defendants' website "collected information that allowed it to know that Plaintiffs' devices were located in California when it installed cookies on their devices." *Id.* at 14:7-9, citing Dkt. No. 1 at ¶¶ 20-21.

Paragraph 20 describes, generally, how websites communicate with users' browsers, referring to the communications between them as "HTTP requests." Dkt. 1 at ¶ 20. It also explains that when a user requests information from a website, the communication "includes the [user's] IP address so that the Website server" knows where to send the response. *Id.* Paragraph 21, meanwhile, explains what an IP address is; asserts that "IP addresses can identify the network

a device is on and the specific device within that network;" and claims that "Public IP addresses used for internet-facing devices reveal geographical locations, such as country, city, or region, through IP geolocation databases." *Id.* at ¶ 21. Neither paragraph, however, alleges that Defendant "collected information that allowed it to know that Plaintiffs' devices were located in California."[11] Nor do Plaintiffs say they could allege this.[12]

Moreover, unlike *Briskin*, Plaintiffs do not allege Defendants use "the data gathered by its cookies to compile consumer profiles and then sell[] them without the consumer's knowledge or consent." Dkt. No. 21 at 14:5-6. Plaintiffs refer the Court to Section II.A of their Opposition but that portion of their brief does not support their argument. More importantly, Defendants and Shopify are not similarly situated. Shopify is akin to the third parties identified in Plaintiffs' complaint (who, again, Plaintiffs have not sued), whereas Defendants are like the online retailers in *Briskin* (who were not sued) on whose websites Shopify's software was allegedly placed.

The allegations against Defendants are wholly unlike those in *Briskin*. Whatever the "something more" might be following *Briskin*, Plaintiffs have not alleged facts sufficient to demonstrate Defendants expressly aimed their conduct at California.[13] Thus, they have not shown purposeful direction and the Court therefore lacks personal jurisdiction over Defendants.

**C. Plaintiffs' Invasion of Privacy and Intrusion Upon Seclusion Claims Fail**

The invasion of privacy claims fail for the same reasons Plaintiffs lack standing: they do not allege Defendants tracked and collected their private or personal data, and transmitted it to any third party. There is no alleged intrusion, let alone one that was highly offensive.

Once again, the paragraphs of the Complaint that Plaintiffs point to do not contain the requisite allegations. *See* Dkt. No. 21 16:22-23, citing Dkt. No. 1 at ¶¶ 1-3, 30-32, 35-37 98-104

---

[11] Again, Plaintiffs "both reside in California," Dkt. No. 21 at 12:27-13:1, but do not say they were **in California** when they visited the sites, Dkt. No. 1 at ¶¶ 98, 101, 103, 106, 109, 111.

[12] Similarly, neither paragraph alleges that Defendants "installed cookies on [Plaintiffs] devices," nor do Plaintiffs say they could allege this.

[13] Plaintiffs fail to address any of the authorities Defendants cited at pages 13 and 14 of their motion.

& 106-12. They describe what "may" be tracked and collected as described in Defendants' privacy policy, and allege Defendants "permitted" and "enabled" the Third Parties to collect their communications. In other words, Plaintiff describe what could have happened to them when they visited the site, not what did happen.[14] Plaintiffs have not plead any actual invasion or intrusion. *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1038 (N.D. Cal. 2021) (dismissing invasion of privacy claim; plaintiffs failed to allege Zoom actually shared their personal data with third parties); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (dismissing invasion of privacy claims; "it [was] not clear . . . what information, precisely, [certain] third parties have obtained").[15]

Because Plaintiffs have not alleged their data was tracked, collected, and transmitted, it is unsurprising they have not and cannot allege any invasion or intrusion was "highly offensive." *Facebook Tracking* does not command a different result. *See Williams v. DDR Media, LLC*, 2023 U.S. Dist. LEXIS 145489, *12-15 (N.D. Cal. Aug. 18, 2023) ("The Ninth Circuit explicitly distinguished *Facebook Internet Tracking* from cases where district courts found no highly offensive intrusion. If the Ninth Circuit intended to invalidate those cases rather than distinguish them, it would have done so."); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (dismissing invasion of privacy and intrusion upon seclusion claims because Plaintiffs did not allege Google's conduct was plausibly "highly offensive" or "egregious"); Dkt. No. 14 at 15-16 (additional authorities). Plaintiffs' invasion of privacy claims must be dismissed.

### D. Plaintiffs' Wiretapping Claim Fails

Plaintiffs concede by their silence that they have not sufficiently alleged a predicate violation of section 631(a) of the California Penal Code by Facebook, Google, TikTok, Microsoft,

---

[14] Plaintiffs again rely on *Facebook Tracking,* but it is distinguishable. Facebook allegedly collected enormous amounts of data across websites after users logged out of the Facebook application. *See* 956 F.3d 596. It allegedly compiled the data it collected into personal user profiles, and its executives allegedly knew users were being tracked after they logged out of the application. *Id*. There are no similar allegations here.

[15] Whether Plaintiffs had a reasonable expectation of privacy in their Private Communications is irrelevant absent an invasion or intrusion.

Adobe, or any of the other third parties listed in the Complaint.[16] For that reason alone, Plaintiffs' wiretapping claim fails. *See Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355, 2023 U.S. Dist. LEXIS 55930, *30 (E.D. Cal. 2023).

Plaintiffs' claim also fails for lack of allegations regarding Defendants' intent to violate the statute. *See Doe v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (dismissing CIPA claim; no allegations Google "is intentionally reading or learning the contents of the plaintiffs' private health communications"). The Court cannot logically infer an intent to aid and abet criminal wiretapping based on alleged use of third-party JavaScript and cookies on websites (routine commercial behavior) along with an allegedly malfunctioning cookie banner.

Nor have Plaintiffs alleged the "contents" of their communications were intercepted, as opposed to just record information. Plaintiffs do not allege they viewed any webpages or conducted any searches, just that they "browsed." Dkt. No. 1 at ¶¶ 103-04, 110-11. Their use of the term "Private Communications" as shorthand for broad categories of information says nothing about what they actually did while on the website, or whether any data was captured or transmitted to anyone. Plaintiffs cite *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2024), for the proposition that "[plaintiff] merely needs to show that the contents were not record information such as her name and address." Dkt. No. 21 at 19:18-19. Here, Plaintiffs have not even alleged that their names or locations were capture or transmitted to anyone. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023), is distinguishable because plaintiffs there alleged an interception of information about the webpages they viewed and searches they conducted. The wiretapping claim fails.

**E. Plaintiffs' Pen Register Claim Fails**

Plaintiffs argue they have adequately alleged a "pen register" claim because the "cookies and the corresponding software code" on Defendants' website record "users' IP address and user-agent information." Dkt. No. 21 at 20. But the Complaint does <u>not</u> specifically allege Defendants

[16] Plaintiffs also do not dispute that Defendants cannot be liable for eavesdropping on their own communications under section 631(a).

(or third parties) "recorded" the Plaintiffs' "IP address" or the Plaintiffs' "user-agent information." In fact, the words "IP address" and "user-agent information" appear nowhere in the portion of the Complaint discussing Plaintiffs' alleged experiences on the site. *See* Dkt. No. 1 at ¶¶ 98-113. Plaintiffs are thus forced to cite to other portions of the Complaint that simply describe how cookies could operate in connection with "users," but which say nothing about how these cookies operated during Plaintiffs' visits. Dkt. No. 21 at 20:12-22. The pen register claim fails.

**F. Plaintiffs' Fraud Claim Fails**

The fraud claim has not been plead with the necessary "particularity" required by Rule 9(b). Plaintiffs do not specify <u>when</u> the fraud happened or <u>where</u> they were when they saw the alleged misrepresentations on Defendants' website and clicked the "Decline" cookies link. It is not enough to allege the fraud occurred "during the class period," Dkt. No. 21 at 27. *See In re Zoom Video Communs. Priv. Litig.*, 525 F. Supp. 3d at 1046 (fraud claims dismissed; no specific dates when plaintiffs saw Zoom's alleged misrepresentations regarding privacy on its website).

Nor do Plaintiffs allege knowledge of the falsity or intent to defraud. Plaintiffs do not allege Defendants <u>knew</u> the "decline" button did not operate as intended, or that they <u>intended</u> to create a non-functioning "decline" button. *See In re Google Assistant Priv. Litig.* ("*Google Assistant*"), 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021) (fraud claims failed to allege Google "*at the time of the alleged misrepresentations*, had the intent to mislead or omit material information" about its software) (emphasis in original). The paragraphs of the Complaint relied upon by Plaintiffs (Dkt. No. 1 at ¶¶ 22-26 and 28-29) say nothing about whether Defendants knew the "Decline" cookies link allegedly did not operate as intended.

Plaintiffs ignore *Google Assistant*, and instead cite *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7–8 (N.D. Cal. Mar. 10, 2022), for the proposition that intent may be alleged generally. *Brown* was a misleading food labeling case, involves an entirely different fact pattern, and is thus inapposite.

Finally, Plaintiffs failed to allege detrimental reliance and damages. They failed to allege they provided any information about themselves while visiting the Defendants' websites, much less that Defendants or any third party obtained their information.

**G. Plaintiffs' Unjust Enrichment Claim Fails**

The failure to allege Defendants captured or shared any private data about Plaintiffs during their site visits is also fatal to their unjust enrichment claim. Plaintiffs cite paragraphs 27, 30, 31, and 98 of the Complaint, *see* Dkt. No. 21 at 28, but these paragraphs do not allege Defendants (or any third party) obtained, let alone profited from the use, of Plaintiffs' data.

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) helps Defendants, not Plaintiffs. That court dismissed an unjust enrichment claim where, as here, plaintiffs failed to allege defendant had obtained their data. *Id*. at 946 ("Plaintiffs do not demonstrate that Defendant has unjustly retained a benefit at Plaintiffs' expense . . . Defendant did not collect information from Plaintiffs in a manner contrary to expectations").[17]

Plaintiffs' reliance on *Shah v. Capital One Fin. Corp*., 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025), and *A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024), is unavailing because plaintiffs in those cases alleged facts showing that defendants had obtained their data. *Shah*, 2025 U.S. Dist. LEXIS 42677, at *5; *A.J.*, 2024 U.S. Dist. LEXIS 194480, at *7. The unjust enrichment claim here fails.

**H. Plaintiffs' Trespass to Chattels Claim Fails**

Plaintiffs' trespass to chattels claim fails because they failed to allege facts showing a "significant . . . interference with the intended functioning" of their devices. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012). Plaintiffs stand pat on their conclusory allegation that their "computing devices" suffered an undefined "reduction of storage, disk space, and performance." Dkt. No. 21 at 22:26-23:1, citing Dkt. No. 1 at ¶ 203. Even taken as true, Plaintiffs do not allege that this reduction was even perceptible. Plaintiffs' failure to articulate the degree of alleged interference with their devices confirms that they have not adequately alleged that it was "significant." Contrary to Plaintiffs' assertion, *Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) and *In re iPhone Application Litig.*, 844 F. Supp. 2d

[17] Plaintiffs also failed to address the cases Defendants cited in the moving papers in which courts dismissed unjust enrichment claims for the same reason. *See* Dkt. No. 14 at 32-32.

at 1069, directly support dismissal of the trespass claim.[18]

The trespass claim also fails because Plaintiffs failed to allege facts showing that any reduction in the performance of their devices was caused by Defendants' alleged conduct, as opposed to any other cookies that may have been installed on their devices. Indeed, Plaintiffs do not explain "how the presence on [their devices] of the cookies from [Defendants' website] would result in any cognizable reduction in storage, disk space, or performance." *Doe*, 741 F. Supp. 3d at 846; *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 124 (N.D. Cal. 2020) (failure to allege "proximate causation" as ground for dismissing trespass claim).

Finally, Plaintiffs' failure to allege <u>facts</u> indicating intentional conduct by Defendants is also fatal to the trespass claim. *See* Dkt. No. 21 at 28 (admitting trespass claim requires intentional conduct); *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003). The claim should be dismissed.

**I. Plaintiffs Have Failed to Join Necessary Parties**

The Third Parties are necessary parties under Rule 19. Although Plaintiffs allege Defendants "allowed" the Third Parties to place cookies on their devices, Plaintiffs allege that the <u>Third Parties</u> (not Defendants) "tracked" their data. Indeed, Plaintiffs <u>admit</u> that to prevail on their claims "[they] must prove that the Third Parties engaged in misconduct" (Dkt. No. 21 at 24). Plaintiffs, however, have not shown they can do so without joining the Third Parties.

Nor have Plaintiffs demonstrated that the Third Parties' interests would not be impaired by proceeding with the litigation in their absence. Plaintiffs argue the Third Parties' rights would not be affected because they would not be bound by any judgment in this case. Dkt. No. 21 at 31. But Plaintiffs do <u>not</u> deny they can sue each Third Party in a separate action that

---

[18] Plaintiffs contend the cases are distinguishable because they did not involve allegations of an interference with the intended function of a device. Plaintiffs mischaracterize the cases. *See Doe*, 741 F. Supp. 3d at 846 (dismissing trespass to chattels claim; "[T]he plaintiffs allege that the placement of cookies on their devices 'reduces storage, disk space, and performance' but they offer no factual support for these allegations"); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (dismissing trespass claim; allegations that challenged conduct "consumed" storage space and "shortened the battery life" of plaintiffs' devices "do not plausibly establish a significant reduction in service constituting an interference with the intended functioning of the system").

would be a virtual "clone" of this one, which the Ninth Circuit has held is precisely the sort of "wasteful litigation" Rule 19 is designed to prevent. *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991). Plaintiffs ignore this Ninth Circuit precedent.

This case is analogous to *Stark v. Stall*, 2019 U.S. Dist. LEXIS 132814, *11-12 (S.D. Cal. Aug. 7, 2019), and *Cooley v. First Data Merc. Servs., LLC*, 2020 U.S. Dist. LEXIS 265810, *4-10 (N.D. Ga. Feb. 7, 2020), where the courts dismissed the actions after finding the absent parties (who allegedly committed the challenged conduct on behalf of defendants) were necessary parties under Rule 19. *See* Dkt. No. 14 at 35-36. Plaintiffs ignore these cases, too.

Plaintiffs rely on cases where defendants allegedly engaged directly in the challenged conduct, as joint tortfeasors or conspirators. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (alleging Apple conspired with AT&T); *Zeff v. Greystar Real Estate Partners, LLC*, 2021 U.S. Dist. LEXIS 30615, at *9 (N.D. Cal. Feb. 18, 2021) (finding defendant "jointly and severally liable" as the party who allegedly "engaged directly in the wrongful acts"). No similar allegations are made here.

Finally, although Plaintiffs argue dismissal is not the exclusive remedy (Dkt. No. 21 at 29), they do not state they are willing to amend to join the necessary Third Parties. Nor have they presented any alternative to dismissal.

### J. Leave to Amend Should Not be Granted

Plaintiffs failed to explain how they can cure the deficiencies of the Complaint, or what additional facts they could allege to establish Article III standing or the other elements of their claims. Leave to amend should be denied. *See Sewell v. Mentor Worlwide, LLC*, 2019 U.S. Dist. LEXIS 145920, * 29 (C.D. Cal. Aug. 27, 2019).

## II. <u>CONCLUSION</u>

For the reasons stated above, and in their opening memorandum, Defendants respectfully request that the Court issue an order dismissing Plaintiffs' Complaint without leave to amend.

//

//

//

DATED May 16, 2025

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
JEFFREY A. TOPOR
GENEVIEVE WALSER-JOLLY
MICHELLE CATAPANG
KRISTINA HOVSEPYAN

By: /s/Jeffrey A. Topor
Attorneys for Defendants