TOMIO B. NARITA (SBN 156576)
Tomio.Narita@wbd-us.com
JEFFREY A. TOPOR (SBN 195545)
Jeff.Topor@wbd-us.com
GENEVIEVE WALSER-JOLLY (SBN 262784)
Genevieve.Walser-Jolly@wbd-us.com
MICHELLE CATAPANG (SBN 308038)
Michelle.Catapang@wbd-us.com
KRISTINA HOVSEPYAN (SBN 340674)
Kristina.Hovsepyan@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 433-1900
Facsimile: (415) 433-5530

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

JONATHAN GABRIELLI and JAIME AYALA, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

vs.

UPBOUND GROUP, INC.; and RENT-A-CENTER, INC.,

Defendants.

CASE NO.: 4:25-cv-00631-HSG

**DEFENDANTS' STATEMENT OF RECENT DECISION IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Judge: Hon. Haywood S. Gilliam, Jr.

Pursuant to Civil Local Rule 7-3(d)(2), and in support of their Motion to Dismiss Complaint ("Motion") (ECF 14), Defendants Upbound Group, Inc. and Rent-A-Center, Inc. ("Defendants") respectfully submit for the Court's review the following opinion from the Northern District Court of California, which is relevant to the arguments raised in section B.2 of Defendants' Reply in support of the Motion ("Reply") (ECF 27) and was published after the Reply was filed with the Court: *Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO (C.D. Cal. July 2, 2025). A copy of that opinion is attached hereto as Exhibit A.

DATED July 12, 2025

WOMBLE BOND DICKINSON (US) LLP
TOMIO B. NARITA
JEFFREY A. TOPOR
GENEVIEVE WALSER-JOLLY
MICHELLE CATAPANG
KRISTINA HOVSEPYAN

By: /s/ Jeffrey A. Topor
Attorneys for Defendants

**EXHIBIT A**

2025 WL 1873999
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

TRAVIS ROUNDS, Plaintiff,
v.
CASE-MATE INC.; DOES 1-25, inclusive, Defendants.

Case No. 2:24-cv-08531-WLH-RAO
|
Filed 07/02/2025

**ORDER RE DEFENDANT'S MOTION TO DISMISS [27]**

HON. WESLEY L. HSU UNITED STATES DISTRICT JUDGE

***1** The Court is in receipt of Defendant's Motion to Dismiss (the "Motion"), pursuant to both Rule 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. (Mot. to Dismiss ("Mot."), Docket No. 27). No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Docket No. 10 at 16). Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for July 8, 2025, is **VACATED**, and the matter taken off calendar. For the reasons explained herein, the Court **GRANTS** the Motion in part and **DENIES** in part, thereby dismissing the action in its entirety with prejudice.

## I. BACKGROUND

### A. Factual Background

Plaintiff Travis Rounds ("Plaintiff") is a "citizen of California" residing in Los Angeles County. (Second Am. Compl. ("SAC"), Docket No. 23 ¶ 4). Defendant Case-Mate Inc. ("Defendant")[1] is a "retailer that sells cell phone cases and accessories." (*Id.* ¶ 10). Defendant is a "Georgia corporation that owns, operates, and/or controls www.case-mate.com[,]" (the "Website"), through which Defendant sells its products. (*Id.* ¶ 5). Plaintiff contends that "[t]hrough its Website[,] Defendant sells and ships its products to California residents." (*Id.* ¶ 10).

Plaintiff alleges that Defendant "contracted with TikTok while it [(TikTok)] was headquartered in California" with the purposes of engaging in "wrongdoings[.]" (*Id.* ¶ 2). "[A]s part of their partnership[,] Defendant chose to install certain software on its Website created by TikTok and designed to ... personally identify each person who visited Defendant's Website (the 'TikTok Software')." (*Id.* ¶ 11). The TikTok Software purportedly "gathers data including device and browser information, geographic information, referral tracking, and URL tracking by running code or

'scripts' on the Website that are sent to each visitor's device" and subsequently sends "the information gathered from the visitor's device to TikTok." (*Id.* ¶ 13). Plaintiff contends that "[w]hen a visitor first lands on the Website the TikTok Software has likely already fired by the time the visitor can see the Website on her device." (*Id.*).

Plaintiff alleges that "by looking for matching or highly similar data [TikTok] already had in its collection ... any Website visitor can be conclusively identified and de-anonymized." (*Id.* ¶ 16). TikTok purportedly "analyzes the data collected" in order "to identify Website visitors" which Plaintiff terms "fingerprinting." (*Id.* ¶ 16). By virtue of this de-anonymization, "Defendant can then market and advertise more efficiently ... thereby gaining a competitive advantage." (*Id.* ¶ 17). Plaintiff avers that all of the data gathered from the TikTok Software is ultimately "controlled by TikTok's Culver City headquarters." (*Id.* ¶ 14).

***2** Plaintiff contends that when he "visited Defendant's Website on March 4, 2024," while "physically located in the state of California," the "TikTok Software had already been installed and was operational[.]" (*Id.* ¶ 12). Even though the Website has a " 'cookie banner,' " Plaintiff alleges that "information about Website visitors and their visit to the Website will have already been sent to TikTok before anyone could have interacted with the 'cookie banner.' " (*Id.* ¶ 20). Plaintiff describes this software as amounting to a " 'trap and trace device[,]' " as it allegedly "identif[ies] the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users[.]" (*Id.* ¶ 23).

Plaintiff alleges that Defendant did not obtain "express or implied consent" from Plaintiff or putative class members "to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization." (*Id.* ¶ 26). Plaintiff brings this putative class action with a single cause of action for violation of California Penal Code section 638.51 ("Section 638.51"), also known as the Trap and Trace provision of the California Invasion of Privacy Act ("CIPA"). (*Id.* ¶¶ 33-41). Plaintiff seeks declaratory relief, injunctive relief, statutory damages under CIPA, punitive damages, prejudgment interest, reasonable attorneys' fees and costs. (*Id.* at Prayer for Relief).

### B. Procedural Background

The pertinent procedural background is set out in the Court's order in which it granted Defendant's motion to dismiss the first amended complaint (the "MTD Order"). (*See* MTD Order, Docket No. 22). The Court, therefore, recites only the procedural history as of the date of the MTD Order, which was issued on March 14, 2025.

The Court in its MTD Order granted Defendant's motion to dismiss pursuant to Rule 12(b)(2), finding it lacked personal

jurisdiction over Defendant, and denied the motion pursuant to Rule 12(b)(6) as moot. (MTD Order at 12). The Court granted leave to amend and ordered Plaintiff to file an amended complaint within twenty-one days. (*Id.*).

On April 4, 2025, Plaintiff filed the SAC. (SAC, Docket No. 23). On April 14, 2025, the parties stipulated to extend Defendant's time respond (Stip., Docket No. 25), which the Court granted. (Order re Stip., Docket No. 26). On May 2, 2025, Defendant filed the Motion before the Court. (*See* Mot.). The Motion is fully briefed.

## II. DISCUSSION

Before the Court is Defendant's Motion to Dismiss pursuant to both Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. As explained below, the Court **GRANTS** in part and **DENIES** in part, such that the action is dismissed in its entirety with prejudice.

### A. Legal Standard

#### *1. Rule 12(b)(2) Standard*

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)"). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *overruled on other grounds as discussed in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017). A district court must accept the uncontroverted allegations in the plaintiff's complaint as true. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," but resolves factual disputes in the plaintiff's favor. *Id.*

"When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only *a prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.' " *Id.*

#### *2. Rule 12(b)(6) Standard*

***3** "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate "only when [the complaint] fails to state a cognizable legal

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see* Fed. R. Civ. P. 12(b)(6).

"[The] court must 'draw all reasonable inferences in favor of the nonmoving party' " and take its non-conclusory allegations as true. *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). The court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions ...").

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Pursuant to Fed. R. Civ. P. 15(a)(2), when a motion to dismiss is granted, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). " 'In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." leave should be granted in conformity with Rule 15(a)(2). *Hall v. City of Los Angeles*, 697 F.3d 1059, 1073 (2012) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B. Analysis**

The Court begins by addressing Defendant's challenge to personal jurisdiction. Finding Plaintiff has failed to sufficiently allege facts demonstrating personal jurisdiction, the Court **GRANTS** Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) with prejudice. The Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED** as moot.

*1. The Court Lacks Specific Personal Jurisdiction over Defendant*

Where, as here, there is no applicable federal statute governing personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.*; *see also* Cal. Code Civ. Proc. § 410.10. Jurisdiction comports with due process only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

***4** The Supreme Court has recognized two types of personal jurisdiction: " 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). Here, Plaintiff does not argue general personal jurisdiction exists over the Defendant, nor does Plaintiff present evidence to dispute Defendants' contention that no such jurisdiction exists. (*See* Mot. at 7-8; *see also* Opp'n to Mot. ("Opp'n"), Docket No. 29 at 4-16). The Court therefore moves directly to the specific, or case-linked, jurisdictional analysis.

For a court to exercise specific jurisdiction, " 'the *suit'* must 'arise out of or relate to the defendant's contacts with the *forum*.' " *Bristol-Myers*, 582 U.S. at 272 (emphasis in original, brackets omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " *Id.* (brackets omitted). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation marks omitted).

The Ninth Circuit has established a three-part test for analyzing a claim of specific personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in

satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

a. Plaintiff Fails to Satisfy the First Prong for Personal Jurisdiction

The first prong of the specific personal jurisdiction test encompasses two distinct concepts, purposeful direction and purposeful availment. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). The Ninth Circuit has clarified that purposeful availment analysis is typically used in suits "sounding in contract ... and for unintentional tort claims," whereas purposeful direction analysis "applies when 'a case sounds in tort' " or for claims "requir[ing] an intentional tortious or 'tort-like' act[.]" *Id.* at 1090-91 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2007) and *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)). Here, where a statutory violation of CIPA is rooted in establishing an intentional tort-like act, the purposeful direction analysis is proper. *See, e.g., Fudge v. Delta Air lines, Inc.*, No. 2:24-cv-04531 HDV SSC, 2024 WL 4445985, at *3 (C.D. Cal. Oct. 4, 2024) (applying "purposeful direction" test to CIPA claim).

In the Ninth Circuit, purposeful direction is analyzed under the "effects" test (the "Effects Test"), which "requires that the defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal quotation marks omitted); *see also CollegeSource Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011); *Harris Rutsky*, 328 F.3d at 1131. Plaintiff has failed to make a *prima facie* showing of specific personal jurisdiction, as the Effects Test does not demonstrate Defendant's purposeful direction toward California, for the reasons explained below.

***5** Turning to the application of the Effects Test, Defendant allegedly "chose to install certain software on its Website created by TikTok and designed to run on the websites of its partners like Defendant and personally identify each person who visited Defendant's Website[.]" (SAC ¶ 11). The installation of software on the Website is a sufficient allegation of an intentional act under the Effects Test. *Dole*, 303 F.3d at 1111. The parties do not dispute this first element.

Defendant argues, however, that the SAC does not "plausibly allege that [Defendant] purposefully directed its conduct at California." (Mot. at 10). The Court agrees. Though the SAC includes the newly added allegation that "[t]hrough its Website Defendant sells and ships its products to California residents[,]" (*see* SAC ¶ 10), this does not suffice for express aiming under the Effects Test, as further explained below.

The Ninth Circuit recently, and since the MTD Order, revisited the issue of express aiming in

the context of an internet website in *Briskin v. Shopify* ("*Briskin*"), 135 F.4th 739 (9th Cir. 2025). The Court finds the analysis instructive.

In *Briskin*, the plaintiff was a California resident who had utilized his iPhone to make a purchase from the website of a clothing brand. *Id.* at 747. The plaintiff completed the purchase by submitting a payment form, believing he was submitting his information directly to the clothing brand. *Id.* That clothing brand, however, had contracted with Shopify,[2] the defendant "e-commerce platform that facilitates online sales for merchants with whom it contracts." *Id.* When merchants contract with Shopify, Shopify "collects and validates the consumer's payment ... indefinitely storing the sensitive personal information it collects through the payment form." *Id.* In this case, neither the website's checkout process nor the payment form itself mentioned Shopify or the partnership. *Id.* Thus, entirely unbeknownst to the plaintiff, it was *Shopify* that generated the payment form, which involved Shopify's "downloading eight separate files on [the plaintiff's] cell phone to generate the form." *Id.* Once the plaintiff hit the "pay now" button, the "newly installed Shopify software code sent [the plaintiff's] name and payment details to Shopify's servers." *Id.* The plaintiff sued, alleging that Shopify's practices "violate California data privacy and access laws[.]" *Id.* at 749. The district court dismissed based on lack of specific personal jurisdiction over Shopify, which the plaintiff then appealed. *Id.* Though a three-judge panel initially affirmed the district court's ruling, a majority of the active judges voted to rehear the appeal *en banc. Id.* Thereafter, the Court reversed and remanded, having concluded that specific personal jurisdiction was satisfied as to Shopify. *Id.* In doing so, the Court focused extensively on the second factor of the Effects Test, revisiting its seminal cases to trace the outer limits of specific personal jurisdiction in the context of the internet age. *Id.* at 752-56.

Shopify had argued that "because it operates nationwide and thus is agnostic as to the location in which it data-mines the consumers' personal identifying information[,]" its conduct was not expressly aimed at California. *Id.* at 757. The court disagreed. The court emphasized that, as a global company, it was "Shopify's business model [ ] to perform the payment processing services it contracts to provide for its merchants and, in the course of doing so, to obtain valuable personal data about California consumers for its own commercial gain." *Id.* at 756. The Court concluded, therefore, that the California-based plaintiff's harm was not "mere happenstance arising from the California consumers' choice to do business with a merchant that has contracted with Shopify[.]" *Id.* at 756. Rather, it was implicitly part of Shopify's business model to have operations in all fifty states.

***6** The Court relied on its prior ruling in *Mavrix Photo, Inc. v. Brand Techs., Inc.* ("*Mavrix Photo*"), in which the Ninth Circuit had held that a "company's internet activity may subject the company to specific personal jurisdiction in a given forum if the company 'knows – either actually or constructively'

about its customer base there and 'exploits that base for commercial gain.' " *Id.* (quoting *Mavrix Photo*, 647 F.3d 1218, 1230 (9th Cir. 2011)). The Court in *Briskin* highlighted that Shopify "knew the location of consumers like [the plaintiff] either prior to or shortly after installing its initial tracking software onto their devices[,]" as Shopify's software is able to secure geolocation data even before any transaction is completed. *Id.* The Court emphasized, therefore, that "Shopify knows about its California residents, interacts with them as an intermediary for its merchants, installs its software onto their devices in California, and continues to track their activities." *Id.* at 759. As such, Shopify's " 'conduct connects [Shopify] to [California] in a meaningful way.' " *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

From a policy perspective, the Court also emphasized that "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *Id.* Accordingly, in this context, the Court explicitly overruled the prerequisite of "a 'forum-specific focus' or differential targeting[.]' " *Id.* The court concluded, in sum, that "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, *even if* that platform cultivates a nation-wide audience for commercial gain." *Id.* at 758 (quotations and citations omitted) (emphasis added). In short, the only aspect of the Effects Test that the Court explicitly disturbed was the express prerequisite of differential targeting of the forum state – which it concluded was a "misread[ing]" from its inception that was unsupported by precent. *Id.* at 757. In the age of massive national and global corporations such as Shopify, such a perquisite would be illogical.

Plaintiff argues that the Ninth Circuit's holding in *Briskin* meaningfully changes the analysis under the Effects Test, such that Defendant's conduct now sufficiently qualifies as express aiming. (Opp'n at 4-13). The Court disagrees.

First, the Court does not agree that *Briskin* significantly alters the Effects Test. The Court in *Briskin* explicitly noted that it was "[a]pplying [the] traditional personal jurisdiction precedent to the ever-evolving world of e-commerce[.]" *Briskin*, 135 F.4th at 746. Furthermore, the Court specifically revisited its prior rulings, explaining how *Briskin* is *consistent* those holdings. *Briskin*, 135 F.4th at 751-56. To the extent that the Court overruled the need for " 'forum-specific focus' or 'differential targeting,' " this holding is limited to the context described above – those situations where a company operates nationwide equally and may be agnostic as to targeting one, specific state. *Id.* at 757. Thus, Plaintiff overstates the extent to which *Briskin* alters the Effects Test.

Second, given that *Briskin* is entirely factually distinguishable, the Court does not find that it

bears upon the present matter as much as Plaintiff suggests. (Opp'n at 12-13). For one, unlike Shopify, Defendant is not alleged to be a global (or even a national) company, such that its business model affirmatively targeting all 50 states might logically subject it to specific personal jurisdiction in all 50 states. Simply put, there are no allegations in the SAC that Defendant either cultivated *or* exploited a nationwide audience for commercial gain. *Id.* at 578 (quoting *Mavrix Photo*, 647 F.3d at 1230). As such, Defendant is in an entirely different position than Shopify in *Briskin.* Furthermore, Plaintiff only alleges that Defendant "sells and ships its products to California residents." (SAC ¶ 10). Even taking this allegation as true, the mere sale and shipment of goods to California fails to suggest that Defendant's contacts with California "are its *own* choice and not random, isolated, or fortuitous[.]" *Id.* at 758 (emphasis added). In other words, there is nothing in the SAC that demonstrates Defendant's contacts with California did not merely arise from California *consumers'* choice to purchase goods from Defendant. Accordingly, the Court finds these allegations insufficient to confer specific personal jurisdiction.

***7** The Court addresses one final point on this issue. Defendant argues that Plaintiff (again) transparently and improperly attempts to "establish personal jurisdiction over [Defendant] through TikTok, who is not a defendant in this action[,]" (*see* Mot. at 11), despite the Court already explicitly rejecting this argument in its MTD Order. (MTD Order at 9-10). The Court agrees with Defendants and reiterates its conclusion that "where TikTok has its headquarters is irrelevant, as it is not a party to this action." (MTD Order at 9-10). Simply put, whether Defendant has a contractual relationship with TikTok – and whether it obtains benefits from this relationship, including "gaining a competitive advantage" (SAC ¶ 17) – is irrelevant to the jurisdictional inquiry. *See Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. 19-cv-07831-AB, 2019 WL 8064196, at *5 (C.D. Cal. Dec. 5, 2019) (emphasizing that "jurisdiction must arise out of the contacts that 'defendant himself creates with the forum state,' and not defendant's contacts with entities that do business or reside there"); *see also Heiting v. Marriot Int'l, Inc.*, No. 2:23-cv-10822-JLS-MAA, 2024 WL 3751276, at *4 (C.D. Cal. Aug. 5, 2024) ("And, given that Salesforce is not a defendant in this lawsuit, [the plaintiff's] arguments regarding third-party connections to the forum are similarly insufficient"). The Court, therefore, finds that Plaintiff has failed to satisfy the first prong of the test for specific personal jurisdiction.

b. <u>Plaintiff Fails to Satisfy the Second Prong for Personal Jurisdiction</u>

Assuming, *arguendo*, that the SAC had satisfied the first prong of the test for specific personal jurisdiction, the Court also finds the second prong unsatisfied. Though the Court need not reach the issue, it briefly addresses it.

Even if the mere "sell[ing] and ship[ping]" of products "to California residents" *were*

sufficient to demonstrate purposeful aiming (*see* SAC ¶ 10), Plaintiff does not allege how Plaintiff's harm arises out of or relates to such conduct. (Mot. at 10). While Plaintiff argues in his opposition that his "privacy injury would never have occurred had the Website not been available to him in California," the Court finds this analysis to be far too reductive, as further explained below. (Opp'n at 14).

The second prong of the test requires that the plaintiff's claim arises out of or relates to the defendant's contacts with the forum. *Schwarzenegger*, 374 F.3d at 802. " 'The first half of that standard asks about causation; but the back half, after the or, contemplates that some relationships will support jurisdiction without a causal showing.' " *Herbal Brands*, 72 F.4th at 1096 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). Such "relatedness requires a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023).

Here, the sole allegation in the SAC relating to Defendant's contacts with California is that Defendant sells and ships products here.[3] (SAC ¶ 10). There are no allegations supporting the conclusion that Plaintiff's injury either has a connection to *or* was caused by Defendant's selling and shipping products to California.[4] Where Plaintiff does not allege that any products were sold or shipped to *him*, the Court finds it particularly challenging to conclude that Plaintiff's harm arose out of Defendant's selling goods to Californians. Simply put, Defendant's "broader business contacts with California are unrelated to [Plaintiff's] alleged privacy-related harm and [Plaintiff] does not (and cannot show) any relationship between [Defendant's] general business in California and [his] cause of action." *Heiting*, 743 F.Supp.3d at 1171 (dismissing for lack of personal jurisdiction where the plaintiff's privacy injury was unconnected to the defendant's general business contacts in California).

***8** In sum, Plaintiff has failed to sufficiently establish specific personal jurisdiction where he has not satisfied either of the first two prongs. The deficiencies identified by the Court remain deficient. (*See* MTD Order at 6-11). Accordingly, the Court finds that granting further amendment would be futile. *Hall*, 697 F.3d at 1073. As such, the Court **GRANTS** the Motion, thereby dismissing the action in its entirety with prejudice.

### *2. Rule 12(b)(6) Is Denied as Moot*

As the Court denies the Motion on jurisdictional grounds, the Court does not evaluate the sufficiency of the pleadings. Accordingly, the Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED** as moot.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion in part and **DENIES** in part, thereby dismissing the action in its entirety

with prejudice. The Court **ORDERS** the Clerk to close the case.

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1873999

## Footnotes

1 The SAC also includes unnamed Does 1 through 25; for the purposes of this Motion, the Court only addresses Defendant Case-Mate, Inc.

2 The Court notes that the defendants in the case included Shopify, Inc and two of its wholly-owned subsidiaries, Shopify (USA), Inc. and Shopify Payments (USA), Inc., which the court in *Briskin* referred to collectively as Shopify.

3 The SAC also alleges that Defendant's contacts with California stem from its relationship with TikTok, which, as already noted above, is irrelevant to the jurisdictional inquiry.

4 Plaintiff does not allege, for example, that Defendant marketed or advertised to Californians and that his visit to the Website only arose due to Defendant's efforts to market and sell products to Californians.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.